**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs and the Class*

[additional counsel on the signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CRAIG NOWAKOWSKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AXT, INC., MORRIS S. YOUNG, and GARY L. FISCHER,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:24-cv-02778-MMC<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>DEMAND FOR JURY TRIAL<br><br>Judge: Hon. Maxine M. Chesney<br>Action Filed: May 6, 2024 |

Lead Plaintiff Charles Grubb and name plaintiff Craig Nowakowski ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding AXT, Inc. ("AXT" or the "Company"), and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased the publicly traded AXT common stock between March 24, 2021 and April 3, 2024, inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2. AXT is a NASDAQ-listed materials science company, with nearly all of AXT's revenue generated by its subsidiary, Beijing Tongmei Xtal Technology Co., Ltd. ("Tongmei") in China. During the Class Period, AXT heavily promoted its "strategic plan" to list Tongmei on the Chinese stock market, presenting it as a significant opportunity that would bring substantial benefits to AXT and its investors.

3. However, AXT's public statements were materially misleading because unbeknownst to AXT investors, Tongmei had stolen trade secrets from its competitors, leading to a criminal investigation and pending prosecution in China. Consequently, Tongmei was prohibited from registering its shares on the Chinese stock market.

4. At the same time Defendants were issuing rosy statements about the prospects of Tongmei's listing on the Chinese stock market, Tongmei failed to answer Chinese securities regulatory authorities for 602 days—effectively abandoning Tongmei's listing on the Chinese stock market.

5. On April 4, 2024, market analyst firm J Capital Research ("J Capital") published a report exposing, for the first time, the true status of Tongmei's IPO. On this adverse news, AXT's stock price dropped $1.73 per share, or 34.94% to $3.22 per share on April 4, 2024—devastating investors. AXT's stock dropped an additional 3.4% or $3.11 per share the next day.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10. Lead Plaintiff Charles Grubb, as set forth in his PSLRA Certification on file with the Court (Dkt. Nos. 17-3, 17-4) and incorporated by reference herein, purchased AXT common stock during the Class Period and has suffered damages as a result of the violations of the federal securities laws alleged herein.

11. Name plaintiff Craig Nowakowski, as set forth in his PSLRA Certification on file with the Court (Dkt. No. 1-1) and incorporated by reference herein, purchased AXT common stock during the Class Period and has suffered damages as a result of the violations of the federal securities laws alleged herein.

12. AXT is incorporated in Delaware and its head office is located at 4281 Technology Drive, Fremont, California 94538. AXT's common stock trades on the NASDAQ exchange under

the ticker symbol "AXT". Defendant AXT describes itself as a "worldwide materials science company that develops and produces high-performance compound and single element semiconductor substrates, also known as wafers. Two of our consolidated subsidiaries produce and sell certain raw materials some of which are used in our substrate manufacturing process and some of which are sold to other companies."

13. As stated below, nearly all of the Company's revenue was generated by Tongmei, AXT's operating subsidiary in China. Given the importance of Tongmei, its operations and oversight were closely monitored by Defendants. In November 2020, AXT announced that the Company intended to list Tongmei on the Shanghai Stock Exchange's "Sci-Tech innovAtion boaRd", which is known as the "STAR Market."

14. Defendant Morris S. Young ("Young") served as the Company's Chief Executive Officer ("CEO") and the Chairman of the Board of Directors throughout the Class Period. Defendant Young has also been the chairman of the board of directors of Tongmei since 2009 and signed all the prospectuses filed with the Shanghai Stock Exchange and the China Securities Regulatory Commission ("CSRC")[1] on behalf of AXT and also as a director of Tongmei in connection with Tongmei's application for listing on the STAR Market.

15. Defendant Gary L. Fischer served as the Company's Chief Financial Officer ("CFO") and Corporate Secretary throughout the Class Period.

16. Defendants Young and Fischer are collectively referred to herein as the "Individual Defendants."

17. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

---

[1] The CSRC is the primary government agency that regulates China's securities and futures markets. The CSRC is similar to the U.S. Securities and Exchange Commission ("SEC"). The CSRC had the ultimate power to approve or reject a company's application for public listing in China.

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

18. AXT is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

19. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

20. AXT and the Individual Defendants are collectively referred to herein as "Defendants."

## I. SUBSTANTIVE ALLEGATIONS

### a. <u>Company Background</u>

21. AXT, founded in 1986, is a materials science company specializing in the development and production of high-performance compound and single-element semiconductor substrates, commonly known as wafers. According to AXT's SEC filings, AXT's wafers are used in applications where traditional silicon substrates cannot meet the performance needs of semiconductor or optoelectronic devices, such as LED lighting and chip-based lasers. AXT purportedly adds value through research, development, and production of specialty material wafers, offering two key product lines: specialty material substrates and raw materials integral to their production. AXT manufactures all of its products in the People's Republic of China ("China").

22. Tongmei is AXT's consolidated subsidiary based in China, responsible for manufacturing substrates and producing raw materials for substrate production. According to the prospectus filed with the Shanghai Stock Exchange and submitted to the CSRC on August 1, 2022, in connection with Tongmei's application for an initial public offering on the STAR Market ("Tongmei Chinese Prospectus (August 1, 2022 Version)"), Tongmei is a "world-renowned semiconductor materials technology company", mainly engaged in indium phosphide substrates, gallium arsenide R&D, production and sales of substrates, germanium substrates, pBN materials and other high-purity materials.

23. Pyrolytic boron nitride, or pBN, is a high-purity ceramic with excellent chemical resistance and strength at high temperatures. pBN is used in crucibles to produce compound semiconductors and molecular-beam epitaxy, which make use of its characteristics. The extent of potential uses of pBN is expanding, and such uses include high functional PG (pyrolytic graphite)/PBN heaters for semiconductor fields and copper indium gallium diselenide based thin film for photovoltaic power generation.

24. During the Class Period, Tongmei contributed almost all of AXT's revenue. For instance, according to the Tongmei Chinese Prospectus (August 1, 2022 Version), Tongmei generated RMB 857,345,200 (approximately US$132,880,533) in revenue for 2021, accounting for 97% of AXT's total revenue. Tongmei Chinese Prospectus (August 1, 2022 Version) noted that in 2021, pBN crucibles contributed 6.44% of Tongmei's revenue, while crucible precision recycling services and other pBN material sales contributed 5.88%. According to AXT's 2020 Annual Report filed on Form 10-K during the Class Period, the 36% revenue increase in 2020 compared to 2019 was "primarily the result of … higher demand for pBN crucibles and OLED manufacturing tools using pBN sold by [its] consolidated subsidiaries."

25. Defendant Young has served as the Chairman of Tongmei's Board of Directors since 2009. He signed all prospectuses filed with the Shanghai Stock Exchange and the CSRC on behalf of AXT, Tongmei's controlling shareholder, as well as in his capacity as Chairman of Tongmei's Board.

**b. AXT's Attempt to List Tongmei in the Chinese Stock Market**

26. On November 16, 2020, after the market hours, AXT announced a "strategic plan to access China's capital markets," aiming to list Tongmei on China's STAR Market, an exchange established by the Chinese government to support innovative companies. Explaining the importance of this plan to AXT and its shareholders, Defendant Young emphasized that after largely completing the relocation to China, AXT was positioned to seize the opportunities presented by "some of the biggest, most influential technology trends of the next decade." To capitalize on these opportunities, AXT needed additional cash. Listing on the STAR Market would "give[] us the ability to replenish our cash and increase our market value for our shareholders with minimal dilution," Young explained, adding that "[s]trengthening our balance sheet can give our customers greater confidence in our ability to support at scale the strong, expected demand for our strategic compound semiconductor materials."

27. To enhance Tongmei's chances of being listed, Young also announced in the November 16, 2020 release that AXT would conduct a corporate reorganization, merging two of its raw material companies—Beijing BoYu Semiconductor Vessel Craftwork Technology Co., Ltd. ("BoYu") and Nanjing JinMei Gallium Co., Ltd. ("JinMei")—into Tongmei, creating a diverse product portfolio under Tongmei's operations. This merger, he stated, would "make Tongmei an attractive company for the STAR Market and create incremental value for our shareholders." The merger was completed in December 2020.

28. Energized by the promising outlook presented by AXT in its November 16, 2020 announcement, investors responded enthusiastically, driving up demand for AXT common shares. This led to a share price increase from a closing price of $7.84 on November 16, 2020, to $9.67 at the close of November 17, 2020, representing a 23.3% gain in one day.

29. As part of the conditions for Tongmei to be eligible for listing on the STAR Market, AXT secured investments from private equity firms in China, raising $49.6 million by January 2021 in exchange for a 7.28% non-controlling interest in Tongmei. In return, Tongmei granted these equity firms the right to redeem any or all of their shares at the original purchase price, without interest, in the event of a material adverse change or if Tongmei failed to achieve its IPO

on the STAR Market by December 31, 2022.

30. However, according to their agreement, if Tongmei's IPO application was submitted to and accepted by the Shanghai Stock Exchange for review by December 31, 2022, the equity firms' redemption rights would be deferred until the Shanghai Stock Exchange or the CSRC rejected the application or Tongmei withdrew it. AXT acknowledged in its annual reports filed during the Class Period that "[a]ny redemptions could have a ***material adverse effect*** on our business, financial condition and results of operations."

31. On January 12, 2021, Defendant Fischer, on behalf of AXT, presented at the 23rd Annual Needham Virtual Growth Conference, a prominent event hosted by the investment bank and asset management firm Needham & Company, featuring presentations from nearly 500 public and private company management teams. AXT's presentation centered on its plan to list Tongmei on the STAR Market and its significance for AXT and its shareholders. Once again, AXT emphasized the benefits of the IPO, including an "attractive balance sheet [with] minimal dilution," and the ability to "leverage[]/unlock[s] China assets" and to "strengthen[] AXT's business development positioning." AXT also revealed that investors were highly confident in the growth opportunities Tongmei's IPO could bring to AXT, leading Chinese private equity firms to have "oversubscribed" AXT's private offering of Tongmei shares. AXT further emphasized the "potential valuation of Tongmei at the STAR Market IPO represent[ing] significant upside."

32. In December 2021, after completing the investment by Chinese equity firms and the merger of BoYu and Jinmei into Tongmei, Tongmei submitted its application, which was formally accepted for review by the Shanghai Stock Exchange on January 10, 2022. The acceptance of the application suspended the Chinese equity firms' right to terminate their investment and request redemption. After several rounds of reviews and inquiries, the Shanghai Stock Exchange gave preliminary approval and forwarded an amended version—the Tongmei Chinese Prospectus (August 1, 2022 Version)—to the CSRC on August 1, 2022, for final review and determination.

33. On October 27, 2022, while announcing its financial results for the third quarter ended September 30, 2022, AXT updated investors on the progress of Tongmei's IPO application,

stating that "[s]ubject to review and approval by the CSRC and other authorities, Tongmei hopes to accomplish this goal as early as Q4 2022."

34. Market analysts also viewed Tongmei's listing as a significant factor in enhancing AXT's valuation.

35. On June 25, 2021, Craig-Hallum Capital Group published a research report on AXT titled "STARstruck: AXTI Trading At 30%+ Discount to Likely STAR Market Valuation" ("Craig-Hallum Report"). The Craig-Hallum Report stated, "we believe AXTI's valuation in the US is likely to significantly increase as Tongmei's STAR Market listing approaches." In the "Investment Highlights" section, the report extensively analyzed Tongmei's listing, relying on statistical analysis comparing the valuation of a similar company that progressed faster with its STAR Market listing. The report concluded that if Tongmei accomplished the listing on the STAR Market, "we see as much as 200% upside potential to AXT[]'s stock."

36. On October 28, 2022, Needham published an analyst report titled "Despite Macro Headwinds, AXTI Appears Oversold; Reduce PT to $6 & Reit Buy." In the report, Needham highlighted that Tongmei's successful IPO by the end of 2022 would be a key factor for a "bull" case on AXT, while failure to list would contribute to a "bear" case. Despite the business challenges AXT was facing for the coming year, Needham reaffirmed its "Buy" rating precisely because Tongmei's anticipated public offering in Q4 2022 would allow "its tangible book value to grow and to provide stronger valuation support to the stock."

**c. <u>Tongmei's IP Infringement Investigation and Criminal Prosecution; AXT Conceals These Significant and Material Risk That Jeopardize the Tongmei IPO</u>**

37. Contrary AXT's optimistic statements regarding Tongmei's IPO and the significant benefits it would bring during the Class Period, AXT concealed a material trade secret infringement had already led to an ongoing criminal investigation that posed a significant and material risk to Tongmei's listing on the Shanghai Stock Exchange.

38. In May 2019, Tongmei hired a former employee of its competitor, Shandong Sinocryst Electronics Corporation ("Sinocryst"), Jiawei Zhang, who brought with him trade secrets

related to pBN materials that he had learned at Sinocryst. Tongmei used these trade secrets to quickly develop certain pBN products.

39. Upon discovering Tongmei's infringement, Sinocryst reported the violation to the Yucheng City Public Security Bureau in China in September 2021. Specifically, Sinocryst alleged that Jiawei Zhang, during his employment at Sinocryst, participated in the research and development of pBN-PG composite heaters, PG process products, pBN clamping rods, and other core technologies, acquiring Sinocryst's trade secrets. On October 12, 2021, the Bureau determined that the case met the conditions for "Establishment of a Case for Investigation" （立案侦查）under Chinese law and launched a criminal investigation into AXT's misconduct.

40. Under Chinese law, a public security agency will establish a case for investigation only when it has identified criminal facts warranting criminal liability and received approval from the head of the public security agency at or above the county level. Therefore, the Yucheng City Public Security Bureau's decision to establish a case against Tongmei demonstrates that the Bureau had obtained evidence of Tongmei's IP infringement, justifying further investigation.[2]

41. At the beginning of 2023, the Yucheng City Public Security Bureau completed its investigation and transferred the case records to the People's Procuratorate, or public prosecutor's office, pending criminal prosecution.

42. Throughout the Class Period, despite promoting the significant benefits of Tongmei's potential IPO, AXT concealed the ongoing criminal investigation and its attendant material risks of jeopardizing Tongmei's IPO plan in any of its SEC filings. Likewise, Tongmei concealed the criminal investigation in its prospectus, submitted to and accepted by the Shanghai Stock Exchange on January 10, 2022. After Sinocryst notified the Shanghai Stock Exchange of the trade secret theft on April 26, 2022, the Exchange sent an inquiry to Tongmei, requiring an explanation on "the legality of the source of [its] core technologies." The inquiry specifically asked Tongmei to clarify:

---

[2] *See The Provisions on the procedures for handling criminal cases by public security agencies*, Article 178, available at https://www.gov.cn/zhengce/2021-12/25/content_5712867.htm

> the source of Tongmei's core technologies, whether or not originated from the research contents and results of relevant personnel while at their former employers, whether or not infringing upon trade secrets, patents or other intellectual properties of other entities and relevant proofs, and whether or not there is any dispute or potential dispute with relevant entity; if any dispute exists, please specify its progress and its influence on research and development, production and operation of the Company.

43. In the same inquiry, the Shanghai Stock Exchange also required Tongmei's counsel and IPO sponsor[3] to review the legality and regulatory compliance of the technologies' source and issue verification opinions.

44. Following this directive, Tongmei's counsel interviewed Defendant Young, other executives, and technicians, and submitted a supplemental legal opinion to the Exchange on June 17, 2022. Instead of mentioning the ongoing criminal investigation, Tongmei's counsel denied that Tongmei had infringed on trade secrets or IP rights and claimed no "dispute or potential dispute with relevant entity."

45. However, the legal opinion acknowledged that Jiawei Zhang, a current Tongmei employee, had been "responsible" for "the R&D of auxiliary PG and pBN-PG composite heaters,"—the exact technologies Sinocryst accused of being stolen. It also confirmed that "[a]ccording to the materials provided by the Company", Tongmei began research on PBN-PG composite heaters in June 2018 and completed development in May 2019. Sinocryst had stated that developing such pBN technologies typically requires 3-5 years of research, emphasizing that

---

[3] In China, a sponsor, typically an investment bank, is an intermediary that assists a company during its initial public offering (IPO) process. Sponsors are responsible for a variety of tasks, including:

- Due diligence: Sponsors coordinate with other intermediaries to perform due diligence on the issuer
- IPO terms: Sponsors help set the terms of the IPO, such as the target amount to raise
- IPO process: Sponsors advise the issuer on the IPO process and help them comply with IPO requirements
- Prospectus: Sponsors draft the prospectus
- Regulatory authorities: Sponsors communicate with regulatory authorities
- Underwriting: Sponsors underwrite and issue shares

these trade secrets hold strong business prospects and anticipating a significant future market.[4] Given the difficulty of developing the said technologies, Jiawei Zhang's May 2019 arrival at Tongmei, and Tongmei's immediate development of the disputed technology, it was not surprising for the Bureau to find that the case met the conditions for "Establishment of a Case for Investigation" and initiate a criminal investigation into Tongmei.

46. Tongmei's IPO sponsor submitted a similar letter to the Shanghai Stock Exchange on June 17, 2022, reiterating the same denials and omitting mention of the Bureau's ongoing criminal investigation.

47. These opinion letters were incorporated in the Tongmei Chinese Prospectus (August 1, 2022 Version), submitted to the CSRC for final review and determination.

48. AXT provided an English translation of the Tongmei Chinese Prospectus (August 1, 2022 Version), including the opinion letters, via Form 8-K filed with the SEC on August 2, 2022 ("August 2, 2022 Form 8-K"). Again, in the August 2, 2022 Form 8-K, including the attached English translation of the Tongmei Chinese Prospectus (August 1, 2022 Version), AXT failed to disclose the ongoing criminal investigation against Tongmei and the material risk that the investigation and subsequent potential criminal prosecution would impose to the success of Tongmei's IPO.

49. Throughout the Class Period, neither AXT nor Tongmei disclosed the ongoing criminal investigation or pending prosecution against Tongmei in any public announcements or filings with U.S. or Chinese authorities, nor did they reveal the material risks this posed to Tongmei's IPO and AXT.

**d. AXT Omitted Tongmei's Failure to Respond to CSRC Inquiries and Abandonment of IPO Attempt.**

50. As disclosed by AXT in the August 2, 2022 Form 8-K, Tongmei Chinese Prospectus (August 1, 2022 Version) was accept for review by CSRC on August 1, 2022.

51. However, during the Class Period, Defendants failed to disclose that on August 10,

[4] https://www.163.com/dy/article/IHC9Q45O0519WTTG.html

2022, merely ten days after the CSRC accepted Tongmei's prospectus for review, the CSRC issued an inquiry letter with two questions, one of which concerned "trade secret disputes." Specifically, the CSRC required Tongmei to:

> Explain the progress of the issuer's trade secret disputes; whether a public security agency has established a case, or will likely establish a case in the future, against the issuer and its subsidiaries; whether it constitutes a corporate crime, and whether it constitutes an obstacle to the pending IPO.

52. The CSRC also required Tongmei's sponsor and counsel to verify the information and submit their opinions. This inquiry letter was transmitted to Tongmei through the Shanghai Stock Exchange.



中国证券监督管理委员会

CHINA SECURITIES REGULATORY COMMISSION

请输入关键字

首页 机构概况 新闻发布 政务信息 办事服务 互动交流 统计信息

当前位置：首页 > 政务信息 > 政府信息公开 > 主动公开目录 > 按主题查看 > 发行监管 > 科创板注册审核 > 首发 > 注册问询和回复

| | | | |
|---|---|---|---|
| 索 引 号 | bm56000001/2022-00012159 | 分 类 | 注册问询和回复;审核反馈 |
| 发布机构 | | 发文日期 | 2022年08月10日 |
| 名 称 | 北京通美晶体技术股份有限公司注册阶段问询问题 | | |
| 文 号 | | 主 题 词 | |

北京通美晶体技术股份有限公司注册阶段问询问题

北京通美晶体技术股份有限公司注册阶段问询问题.wps

53. However, during the Class Period, Defendants failed to disclose that Tongmei never responded to the CSRC's inquiries, allowing them to remain unanswered for 602 days—over 1 year and 7 months—effectively abandoning its IPO application Despite this, AXT continued to represent to investors the significant benefits of Tongmei's "ongoing" IPO efforts, which the company had, in reality, abandoned. Even now, Tongmei has yet to respond, further reinforcing

its intent to abandon the IPO attempt.

54. For context, the CSRC's database includes all inquiries sent to STAR Market IPO applicants and their corresponding responses. Typically, applicants respond within 1 to 2 months, with delays exceeding 6 months being extremely rare.

55. According to Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures"), promulgated by the CSRC in 2020 and applicable to Tongmei, a company is prohibited from registering its shares to trade on the STAR Market if "a judicial authority has established a case against and is investigating the company for a suspected crime."[5] The subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*, which replaced the earlier STAR Market Registration Measures in February 2023, contains an identical provision.

56. This means that under the CSRC rules applicable to Tongmei during the Class Period, the ongoing criminal investigation and pending prosecution would prevent Tongmei from registering its shares to trade on the STAR Market.

57. A senior sponsor from a prominent Chinese securities firm confirmed that "Major trade secret disputes that have entered the judicial process generally need to have a clear outcome before the regulatory authorities will determine the advancement of the company's IPO arrangements based on the impact [of the outcome]." [6] He further noted that given the conclusion of the Yucheng City Public Security Bureau's investigation, and without a settlement between Tongmei and Sinocryst, "Tongmei may still face a lengthy prosecution."

58. None of this critical information was disclosed by AXT to its investors during the Class Period which rendered AXT's affirmative statements materially false and misleading.

[5] China's judicial authorities include courts, procuratorates, public security agencies, national security agencies, judicial administrative agencies, notary agencies, etc.
[6] https://www.163.com/dy/article/IHC9Q45O0519WTTG.html

## II. MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

59. On March 23, 2021, after market hours, AXT filed with the SEC its quarterly report on Form 10-K for the period ended December 31, 2020 (the "2020 Annual Report"). Attached to the 2020 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

60. The 2020 Annual Report contained a risk disclosure stating that

> ***Intellectual property infringement claims may be costly to resolve and could divert management attention.***
> Other companies may hold or obtain patents on inventions or may otherwise claim proprietary rights to technology necessary to our business. ***The markets in which we compete are comprised of competitors that in some cases hold substantial patent portfolios covering aspects of products that could be similar to ours. We could become subject to claims that we are infringing patent, trademark, copyright or other proprietary rights of others.*** We may incur expenses to defend ourselves against such claims or enter into cross license agreements that require us to pay royalty payments to resolve such claims. For example, in 2020, we and a competitor entered into the Cross License Agreement, which has a term that began on January 1, 2020 and expires on December 31, 2029. We have in the past been involved in lawsuits alleging patent infringement, and could in the future be involved in similar litigation.

(Emphasis added).

61. The above risk warning was vague, generic, and therefore materially false and misleading at the time it was made because Defendants failed to specifically disclose that in May 2019, Tongmei hired Jiawei Zhang, a former employee of its competitor, Sinocryst, who brought with him trade secrets related to pBN materials that he had learned at Sinocryst. Tongmei used these trade secrets to quickly develop certain pBN products, subjecting Tongmei and AXT to a specific known heightened risk of criminal investigation and prosecution due to Tongmei's IP infringement.

62. On January 10, 2022, the Company filed with the SEC a current report on Form 8-K ("January 10, 2022 Form 8-K"). Defendant Fischer signed the report. Part of and attached to

this current report was an exhibit titled "Preliminary Information Document of to Beijing Tongmei Xtal Technology Co., Ltd.", which was the English translation of the first version of Tongmei's Chinese prospectus filed with the Shanghai Stock Exchange (the "Beijing Tongmei Prospectus (First Version")"). The January 10, 2022 Form 8-K states, in the relevant part, that,

> On November 16, 2020, we announced a strategic initiative to access China's capital markets by beginning a process to list shares of Tongmei in an IPO on the STAR Market. We formed and founded Tongmei in 1998 and believe Tongmei has grown into a company that will be an attractive offering on the STAR Market. To qualify for a STAR Market listing, the first major step in the process was to engage private equity firms in China ("Investors") to invest funds in Tongmei. By December 31, 2020, 10 Investors had engaged with Tongmei for a total investment of approximately $48.1 million. The remaining investment of approximately $1.5 million of new capital was funded in early January, 2021. … In exchange for an investment of approximately $49 million, the Investors received a 7.28% noncontrolling interest in Tongmei. Pursuant to the investment agreements with the Investors, each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest, in the event of a material adverse change or if Tongmei does not achieve its IPO on or before December 31, 2022. This right is suspended when Tongmei submits its formal IPO application to the CSRC. However, if on December 31, 2022 the IPO application has been submitted and accepted by the CSRC or the stock exchange and such submission remains under review, then the date when such Investor is entitled to exercise such redemption right shall be deferred to a date ***when such submission is rejected by the CSRC or stock exchange, or the date when Tongmei withdraws its IPO application.*** Tongmei would be required to sell a minimum of 10% of its equity in the IPO. The process of going public on the STAR Market includes several periods of review and is therefore a lengthy process. Tongmei does not expect to complete the IPO until mid-2022.
>
> (Emphasis added).

63. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that at the time, Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

64. Also attached to the January 10, 2022 Form 8-K was an exhibit titled "AXT, Inc. Announces Formal Application for Subsidiary IPO." This announcement stated that,

> "This is a significant achievement and an important milestone for AXT," said Morris Young, chief executive officer. "We founded Tongmei back in 1998. Since then, it has grown into a company that is engaged in the research, development, production and sale of InP substrates, GaAs substrates, germanium substrates, PBN and other high-purity materials, which we believe makes it an attractive offering on the STAR Market. With success in our addressed markets, strong customer traction, and a number of new applications coming to market this year and beyond, we have significant momentum building in our business. ***If completed, the IPO will provide proceeds that will be invested in Tongmei to enable us to expand capacity to capture high-volume opportunities across our portfolio and develop new products*** to drive incremental growth and value from market expansion in 5G, data center expansion, telecommunications modernization, healthcare monitoring, microLEDs, and more."
>
> The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. Tongmei does not expect to complete the IPO until the second half of 2022. The process of going public on the STAR Market is complicated and we have little or no experience in taking a company public in China. ***There can be no assurance that this process will be completed.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. An English version of the Tongmei preliminary information document has been furnished under a Form 8-K that has been filed with the Securities and Exchange Commission.
>
> (Emphasis added).

65. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that at the time, Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

66. On March 15, 2022, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual

Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

67. The 2021 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

68. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that at the time, Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

69. The 2021 Annual Report also contained another risk disclosure, warning that

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if Tongmei fails to achieve the IPO on or before December 31, 2022. This could result in disgorging the cash that we raised from the investors.

70. The above statements were incomplete materially false and misleading because Defendants failed to disclose that Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

71. On August 2, 2022, AXT filed with the SEC the August 2, 2022 Form 8-K,

providing the English translation of the Tongmei Chinese Prospectus (August 1, 2022 Version) filed with the CSRC. The August 2, 2022 Form 8-K stated, in relevant part, that,

> On January 10, 2022, Tongmei's formal application to list its shares in an initial public offering (the "IPO") on the Shanghai Stock Exchange's Sci-Tech innovAtion boaRd (the "STAR Market") was accepted for review by the Shanghai Stock Exchange. On July 12, 2022, the Shanghai Stock Exchange approved Tongmei's IPO application. On August 1, 2022, Tongmei's revised IPO application was accepted for review by the China Securities Regulatory Commission (the "CSRC").
>
> ….
>
> The STAR Market IPO remains subject to review and approval by the CSRC and other authorities. The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. ***There can be no assurances that the proposed STAR Market listing and IPO will ultimately be approved by the CSRC and other authorities and completed.***
>
> (Emphasis added).

72. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

73. On March 16, 2023, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

74. The 2022 Annual Report disclosed, in relevant part, that

> Tongmei submitted its IPO application to the Shanghai Stock Exchange in December 2021 and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC*** and other authorities. ***The process of going public on the STAR Market includes several periods of review*** and, therefore, is a lengthy process. Further, the timing of the completion of the Star Market IPO is subject to numerous factors outside Tongmei's control. The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company.

(Emphasis added).

75. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

76. The 2022 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

77. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

78. The 2022 Annual Report contained a risk disclosure, warning that,

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if the IPO fails to pass the audit of the Shanghai Stock Exchange, is not approved by the CSRC or Tongmei cancels the IPO application. This could result in disgorging the cash that we raised from the Investors.

79. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's

approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

80. The 2022 Annual Report also contained a risk disclosure, warning that,

> ***The terms of the private equity raised in China as a first step toward an IPO on the STAR Market grant each Investor a right of redemption if Tongmei fails to achieve its IPO.***
>
> Pursuant to the Capital Investment Agreements with the Investors, ***each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest, in the event the IPO*** fails to pass the audit of the Shanghai Stock Exchange, ***is not approved by the Chinese Securities Regulatory Commission ("CSRC") or Tongmei cancels the IPO application.*** The aggregate redemption amount is approximately $49 million.
>
> Tongmei submitted its IPO application to the Shanghai Stock Exchange and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC and other authorities.*** The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. Subject to review and approval by the CSRC and other authorities, ***Tongmei expects to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. ***There can be no assurances that Tongmei will complete its IPO in 2023 or at all.*** In the event that investors exercise their redemption rights, we may be required to seek additional capital in order to redeem their Tongmei shares and there would be no assurances that such capital would be available on terms acceptable to us, if at all. ***Any redemptions could have a material adverse effect on our business, financial condition and results of operations.***
>
> (Emphasis added).

81. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the

pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

82. On March 15, 2024, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

83. The 2023 Annual Report disclosed, in relevant parts, that,

> Tongmei submitted its IPO application to the Shanghai Stock Exchange in December 2021 and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC*** and other authorities. The process of going public on the STAR Market includes several periods of review and therefore is a lengthy process. ***Subject to review and approval by the CSRC and other authorities, Tongmei hopes to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company.

(Emphasis added).

84. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the

pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

85. The 2023 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

86. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

87. The 2023 Annual Report contained a risk disclosure, warning that,

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if the IPO fails to pass the audit of the Shanghai Stock Exchange, is not approved by the CSRC or Tongmei cancels the IPO application. This could result in disgorging the cash that we raised from the Investors.

88. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

89. The 2023 Annual Report also contained a risk disclosure, warning that,

> ***The terms of the private equity raised in China as a first step toward an IPO on the STAR Market grant each Investor a right of redemption if Tongmei fails to achieve its IPO.***
>
> Pursuant to the Capital Investment Agreements with the Investors, ***each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest***, in the event the IPO fails to pass the audit of the Shanghai Stock Exchange***, is not approved by the CSRC or Tongmei cancels the IPO application.*** The aggregate redemption amount is approximately $49 million.
> Tongmei submitted its IPO application to the Shanghai Stock Exchange and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC and other authorities.*** The process of

> going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. ***Subject to review and approval by the CSRC and other authorities, Tongmei expects to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. There can be no assurances that Tongmei will complete its IPO in 2024 or at all. ***In the event that investors exercise their redemption rights, we may be required to seek additional capital in order to redeem their Tongmei shares and there would be no assurances that such capital would be available on terms acceptable to us, if at all.*** Any redemptions could have a ***material adverse effect*** on our business, financial condition and results of operations.
>
> (Emphasis added).

90. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted.

## III. THE TRUTH BEGINES TO EMERGE

91. On April 4, 2024, before the market opened, J Capital Research ("J Capital") released a report (the "J Capital Report") about AXT. The Report revealed that,

> AXT is listed in the U.S., but its business operations are almost all conducted through a subsidiary in China. AXT wants to list that subsidiary in Shanghai to capture new financing. But the listing prospectus attracted unexpected scrutiny and unveiled a plethora

> of undisclosed issues in China. Our research has found those issues are only the tip of the iceberg.
>
> The listing vehicle raised $49 [million] from private investors at a sky-high valuation in 2020. AXT expected to capture much more investment at the time of the IPO. But it has been 18 months since the last IPO update, and ***U.S. investors haven't been told that the IPO has apparently been blocked by Chinese regulators.***
>
> (Emphasis added, originally highlighted in pink).

92. Contrary to the Company's optimistic comments about Tongmei's prospects of being listed on the STAR Market, The Report revealed that,

> Chinese regulators asked a lot of questions about the original submission, and slowly, AXT responded. The last submission was in August 2022. Now the process has stalled. ***U.S. Investors have been told nothing, but several press outlets in China have reported that the IPO application has been blocked***.
>
> (Emphasis in original.)

93. The J Capital Report further revealed the criminal investigation against Tongmei due to the IP infringement as stated above.

94. On this news, the price of AXT stock fell $1.73 per share, or 34.94%, to close at $3.22 per share on April 4, 2024. The next day, AXT's stock fell $0.11, or 3.4%, to close at $3.11 per share on April 5, 2024.

95. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiffs and the other Class members have suffered significant losses and damages.

## IV. PLAINTIFFS' CLASS ACTION ALLEGATIONS

96. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased the publicly traded AXT common stock during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

97. The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, the Company's common stock shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

98. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

99. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

100. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

101. A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

102. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;
- as a public issuer, the Company filed public reports;
- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's common stock was liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

103. Based on the foregoing, the market for the Company common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

104. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## V. COUNTS

**COUNT I**

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

105. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

106. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

107. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

108. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's common stock during the Class Period.

109. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading

statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

110. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiffs and the Class.

111. As a result of the foregoing, the market price of the Company's common stock was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's common stock during the Class Period in purchasing the Company's common stock at prices that were artificially inflated as a result of Defendants' false and misleading statements.

112. Had Plaintiffs and the other members of the Class been aware that the market price of the Company's common stock had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's common stock at the artificially inflated prices that they did, or at all.

113. As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

114. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's common stock during the Class Period.

**COUNT II**

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

115. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

117. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

118. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company common stock.

119. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

## VII. JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 24, 2024

Respectfully submitted,
**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen

Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

Jing Chen, Esq.
101 Greenwood Ave, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On September 24, 2024, I electronically filed the foregoing **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on September 24, 2024

/s/ Laurence M. Rosen
Laurence M. Rosen