# EXHIBIT 1

2025 WL 606108
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Kishore NATH, individually and on behalf
of all others similarly situated, Plaintiff,

v.

LIGHTSPEED COMMERCE
INC., Dax Dasilva, and Brandon
Blair Nussey, Defendants.

21-cv-6365 (BMC)
|
Signed February 24, 2025
|
Filed February 25, 2025

**Attorneys and Law Firms**

J. Alexander Hood, Thomas Henry Przybylowski, Jeremy Alan Lieberman, Pomerantz LLP, New York, NY, Tamar A. Weinrib, Pomerantz Haudek Grossman & Gross LLP, New York, NY, for Plaintiff.

Alex Drylewski, William John O'Brien III, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants.

**MEMORANDUM DECISION AND ORDER**

COGAN, District Judge.

 **\*1**  In response to defendants' motion to dismiss this putative class action, plaintiff Kishore Nath has pared back nearly all the allegations in his amended complaint. He now limits his securities fraud claims, once perched atop a towering pile of allegedly fraudulent conduct, to three bundles of statements and omissions: (1) defendants' alleged misrepresentation of defendant Lightspeed Commerce Inc.'s organic revenue growth, (2) defendants' alleged misrepresentation of Lightspeed's organic customer-base growth, and (3) defendants' alleged misrepresentation of their rationale for acquiring various peer companies. This last-ditch effort falls short.

You begin to worry that a securities fraud plaintiff is in trouble when the first line in his brief opposing a motion to dismiss

foregrounds that the defendant-company "*has never earned a profit*" (emphasis in original) – ignoring that investors have poured billions of dollars into similarly situated public companies with full knowledge of that fact. And you know the plaintiff is in trouble when he repeats that bolded, italicized phrase four more times throughout the rest of the brief. So here. Lightspeed never misrepresented its profitability, and Nath does not even accuse it of that. The concept of profit is not necessarily related to whether a company generates its revenue through internal growth or by acquisition.

The question before me is whether Lightspeed misrepresented the source of its revenue, how it grew its customer base, or its reasons for buying out competitors, and if so, whether it mattered. The amended complaint fails at the first step. It alleges no plausible reasons why Lightspeed's statements were false or misleading, and defendants had no duty to disclose – or, in some cases, had already disclosed – the information Nath claims they fraudulently withheld. Accordingly, defendants' motion is granted.

**BACKGROUND**

Lightspeed is a Canadian "software as a service," or "SaaS," company that markets and licenses its proprietary software products to businesses. It is traded on both the Toronto Stock Exchange and New York Stock Exchange. During the putative class period – September 11, 2020, through September 28, 2021 – defendant Dax Dasilva was its CEO and defendant Brandon Blair Nussey was its CFO.

Lightspeed derives its revenue from two sources: (1) "subscription revenue"; and (2) "transaction-based revenue." The definitions and accounting treatments of these two revenue sources are critical to understanding this dispute. Subscription revenue, as the name suggests, is generated by subscription licensing agreements. Under these agreements, customers purchase a subscription to Lightspeed's software and agree to some pricing plan. The pricing plans come in two flavors: a subscribing customer can either pay for the whole subscription period up front or pay on an interim basis, *e.g.*, monthly, yearly or multi-yearly.

The pricing plans each have different accounting treatments. Up-front payments initially create a liability on Lightspeed's balance sheet, not an asset. That is because, when Lightspeed receives the payment, it still owes services to the customer. The payment is thus booked as a "deferred revenue" balance,

a liability, because Lightspeed has no right to the revenue until it provides the service. Over the subscription period, that deferred revenue balance is shifted from a liability to an asset, cash, on Lightspeed's balance sheet as Lightspeed provides services and "earns" the money. In this way, as to any one customer that paid its subscription up front, the related deferred revenue balance will reduce at the same rate as Lightspeed's subscription revenue will increase. The interim payment plans, by contrast, create "trade receivables" on Lightspeed's balance sheet. Trade receivables, the inverse of deferred revenue, are an asset representing services rendered for which customers have not yet paid. Together, trade receivables and deferred revenue provide some insight into Lightspeed's overall subscription revenue – trade receivables are part of Lightspeed's yearly subscription revenue, and deferred revenue is subscription revenue that will accrue in the future.

**\*2** Transaction-based revenue is more straightforward, at least from an accounting standpoint. According to Lightspeed's public filings, its software provides a platform for its customers "to accept payments from consumers." Lightspeed charges certain processing and transaction fees on these payments, which it calls "Lightspeed Payments." It also enters revenue-share agreements with its customers, either in lieu of or in addition to the processing and transactions fees. The revenue generated from both is booked as "transaction-based revenue."

Nath's claims stem from the interplay between these revenue streams and Lightspeed's "strategic and value-enhancing acquisitions" of three other SaaS companies: ShopKeep, Inc.; Upserve, Inc.; and Vend Limited. During and after this acquisition "spree," as Nath describes it, Lightspeed and the individual defendants made various statements about the purposes of the acquisitions. They stated that the acquisitions would, for example, "allow[ ] for increased investment in sales, marketing, and research and development"; "accelerate product innovation"; and "leverage ... complementary modern technology." During a 2021 earnings call, Dasilva told investors that Lightspeed's "goal is to integrate all of our acquisitions" and that "for ShopKeep and Upserve, the integration is well underway, with operations expected to be fully integrated by April and product by end of summer."

The individual defendants also reassured the investing public that, in addition to the acquisition-related expansion, Lightspeed maintained strong organic metrics, both in terms

of revenue and customer growth. For example, they disclosed that Lightspeed's "organic software and payments revenue" – which includes both subscription and transaction-based revenue – grew 47% in the third quarter of 2021 and 78% in the first quarter of 2022. And Nussey stated that the third quarter of 2021 was "another strong quarter of organic customer location adds."

Nath contends that Lightspeed's representations about the acquisitions were misleading and, in some cases, false. Virtually all the amended complaint's allegations are lifted from a report published by Spruce Point, a short seller, purporting to demonstrate that Lightspeed used the acquisitions to hide its declining organic subscription revenue and customer growth. First, the report cast doubt on whether Lightspeed's organic software and payments revenue grew 47% in the third quarter of 2021 and 78% in the first quarter of 2022. It did so by conducting a "balance sheet analysis" which showed that, after subtracting out the acquirees' contributions, Lightspeed's deferred revenue and trade receivables declined over both periods. Second, it provided figures indicating that Lightspeed added more customer locations from acquisitions than it did organically over the relevant period. The Spruce Point report, and by extension the amended complaint, also contains other accusations of fraud against Lightspeed, but again, Nath has limited his claims to Lightspeed's organic growth.

Nath filed suit shortly after the Spruce Point report was published. The amended complaint asserts securities-fraud claims under § 10(b) of the Exchange Act and related claims under § 20(a) seeking to hold the two individual defendants liable. Defendants have moved to dismiss the entire action, and in response, Nath raised the three bases discussed above – (1) Lightspeed's misrepresentation of its organic revenue growth, (2) Lightspeed's misrepresentation of its organic customer-base growth, and (3) Lightspeed's misrepresentation of its rationale for acquiring various competitors – and walked away from the other allegations.

**\*3** I address each basis in turn. Because I conclude that Nath has not pled a § 10(b) claim, his § 20(a) claims also fail. See In re PXRE Grp., Ltd., Sec. Litig., 600 F. Supp. 2d 510, 548 (S.D.N.Y. 2009) ("In order to establish a *prima facie* case of liability under section 20(a), a plaintiff must show a primary violation by a controlled person.") (cleaned up).

## DISCUSSION

To survive a motion to dismiss, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). Although a court must "accept[ ] as true all material factual allegations in the complaint and draw[ ] all reasonable inferences in plaintiffs' favor[,] .... [t]he same deference does not extend ... to pleaded legal conclusions." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). In addition to the allegations in the complaint, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Comms. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Rule 10b-5, which implements § 10(b), "prohibits 'any untrue statement of a material fact' – *i.e.*, false statements or lies,' " and it "prohibits omitting a material fact necessary 'to make ... statements made ... not misleading' " *i.e.*, misleading omissions or "half-truths." Macquarie Infrastructure Corp. v. Moab Partners, L.P., 601 U.S. 257, 263 (2024) (second alteration in original) (quoting 17 C.F.R. § 240.10b-5(b)). The enhanced pleading standards of the Private Securities Litigation Reform Act require that a plaintiff "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).

### I. Organic Software and Payments Revenue Growth

The centerpiece of Nath's newly narrowed claim is a medley of statements disclosing that Lightspeed's organic software and payments revenue grew 47% in the third quarter of 2021 and 78% in the first quarter of 2022. These statements, he alleges, "conflict" with the Spruce Point report's calculation that Lightspeed's organic deferred revenue and trade receivables declined in each quarter. Nath vacillates between characterizing Lightspeed's statements about its software and payments revenue as "false" or merely "misleading." He has adequately pled neither.

Fatal to establishing falsity, Nath does not explain why Lightspeed's organic software and payments revenue declined or otherwise grew slower than the rates it disclosed. If Lightspeed had disclosed that it experienced organic *deferred revenue* and *trade receivables* growth, the math that the complaint borrows from Spruce Point might demonstrate falsity. See Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 191 (S.D.N.Y. 2010). Lightspeed, however, made no such disclosure. It stated that its organic *software* and *payments* revenue grew, which is not inconsistent with a decline in deferred revenue and trade receivables.

This conclusion is readily apparent from Lightspeed's public disclosures and Nath's own allegations about Lightspeed's business model. The decline in organic deferred revenue suggests that Lightspeed was receiving fewer lump-sum payments, and the decline in organic trade receivables suggests that Lightspeed was entering fewer subscription agreements with interim payment plans. At best for Nath, these declines suggest that Lightspeed generated less subscription revenue. Yet a decline in subscription revenue alone cannot be "the reason ... why the statement[s]" about overall organic revenue growth are untrue. 15 U.S.C. § 78u-4(b)(1)(B). Remember, subscription revenue is only one of Lightspeed's two revenue streams. Lightspeed also generates transaction-based revenue, which is unmoored from deferred revenue and trade receivables. A significant increase in Lightspeed's organic transaction-based revenue may well have resulted in organic revenue growth despite a decline in organic subscription revenue.

**\*4** The PSLRA therefore requires that Nath provide some reason why Lightspeed's organic transaction-based revenue could not have picked up the slack, and the amended complaint makes no attempt to do so. In his opposition brief, Nath points to a public disclosure that Lightspeed's subscription revenue accounted for 54% of its overall revenue in 2021 while its transaction revenue accounted for merely 37%. But those numbers do not reference growth rates, nor do they isolate organic revenue from non-organic revenue. They have no bearing on whether Lightspeed's organic transaction-based revenue growth could have led to the disclosed organic growth rates.

Indeed, Lightspeed's other public disclosures suggest that transaction-based revenue *was* responsible for the disclosed organic growth. Lightspeed claimed that revenue from Lightspeed Payments "grew 371% in Fiscal 2021." It also announced that "[f]or the three and six months ended September 30, 2021, ... transaction-based revenue accounted for 49% and 49%, respectively, of ... total revenues," up from "34% and 31%" a year prior. Thus, Nath has

failed to plausibly establish that the organic-revenue-growth statements were false.

He is no more successful in explaining why they are misleading. Nothing in Lightspeed's disclosures implies that both organic subscription and organic transaction-based revenue each increased – it merely stated that organic software and payments revenue, which includes both revenue streams, increased.[1] It is well settled that "corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000). Of course, a reasonable investor might consider Lightspeed's organic deferred-revenue and trade-receivable troubles quite relevant to its valuation. Yet Rule 10b-5 imposes no freestanding duty to disclose all ascertainable material information. See Macquarie, 601 U.S. at 263. Pure omissions – even pure omissions of information that a "reasonable investor would very much like to know" – are not actionable. In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993). A plaintiff must provide the court with some affirmative statement rendered misleading by the omission. See Macquarie, 601 U.S. at 263. And Nath has not done so here.

## II. Customer Base Growth

Nath's second theory of securities fraud – that Lightspeed misrepresented its organic customer-base growth – is untethered from the amended complaint. The complaint does discuss customer-base growth, but only to accuse Lightspeed of changing how it calculated its Average Revenue Per User. In response to defendants' motion to dismiss, Nath abandoned his ARPU theory. He then picked various statements out of the rubble and argued that they form an entirely new basis for securities fraud. It is no surprise that such allegation-foraging does not yield an actionable claim.

**\*5** For starters, most of the statements culled by Nath simply do not refer to Lightspeed's organic customer-base growth; they refer to Lightspeed's growth generally. There is nothing misleading about stating that "Lightspeed was able to ... expand [its] customer base" or that "continued growth of [its] customer base" was primary driver[ ] of [its] business model." That is true regardless of whether the growth came from the acquirees or Lightspeed itself.

And the few statements that refer to organic growth fare no better. Nothing in the amended complaint provides reason

to question the claims that Lightspeed experienced a "strong quarter of organic customer location adds" during the third quarter of 2021, or that the first quarter of 2022 was a "record quarter for new customer location additions, which were over 60% higher than a year ago organically."

Perhaps these statements would be misleading if Lightspeed failed to disclose exactly how many of its customers were added by acquirees. That would bring this case closer to those Nath cites which found statements about "strong" organic growth misleading when growth was mostly driven by non-organic factors. See, e.g., Freudenberg, 712 F. Supp. 2d at 184-85; Sills v. United Nat. Foods, Inc., 2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024). There is just one problem – Lightspeed had already disclosed those figures during each acquisition. Any reasonable investor, then, could easily discern how the acquirees contributed to Lightspeed's customer base, and Nath's claim runs headfirst into the straightforward principle that "dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." In re Curaleaf Holdings, Inc. Sec. Litig., 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) (quoting In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003)).

## III. Acquisitions

The final arrow in Nath's new quiver is a collection of statements about Lightspeed's motivations for the acquisitions. Nath alleges that, despite Lightspeed's proffered rationales, the acquisitions were in fact meant only to inflate Lightspeed's organic customer growth count and organic subscription revenue. He relatedly alleges that because Lightspeed was interested only in inflating its numbers, it never intended to integrate the acquirees, despite assuring investors it would.

In both cases, Nath is alleging that defendants made false statements about their presently held beliefs. Such statements are actionable when "the speaker did not hold the belief she professed," a "supporting fact ... supplied" in the statement was false; or "the speaker omits information whose omission makes the statement misleading." Tongue v. Sanofi, 816 F.3d 199, 210 (2d Cir. 2016) (citing Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175 (2015)). To demonstrate that a speaker disbelieved a professed opinion, "[i]t is not sufficient ... to allege that an opinion was unreasonable, irrational, excessively optimistic, [or] not borne out by subsequent events." Lopez v. Ctpartners Exec. Search Inc., 173 F. Supp. 3d 12, 24 (S.D.N.Y.

2016) (cleaned up). A plaintiff must allege particular facts suggesting that the speaker did not believe the opinion. See id.

Under this framework, neither the rationale-related statements nor the integration-related statements are actionable. Take first the former. Nath alleges that the acquirees were "failing" and "near bankruptcy," which he concludes shows that defendants could not have intended to leverage the acquirees for their software and assets. But, at best, these allegations merely show that defendants were irrational in thinking Lightspeed could do so. See Lopez, 173 F. Supp. 3d at 24. Similarly, although the amended complaint alleges that the individual defendants stated in company-wide townhall meetings that they wanted to increase Lightspeed's customer count with the acquisitions, that has no bearing on whether they *also* sought to buy the companies for other reasons.

 **\*6** Even if one credits Nath's conclusory assertion that defendants wanted to mask Lightspeed's declining growth rate with the acquisitions, their statements were not rendered misleading by the failure to disclose that agenda. Again, defendants never asserted that the stated reasons were the only reasons it wanted to acquire the companies. On top of that, Nath runs into a familiar problem. Because defendants had already disclosed that the acquisitions were motivated by growing Lightspeed's customer base, defendants had no duty to re-disclose. See In re Curaleaf, 519 F. Supp. 3d at 107. Lightspeed's public filings are full of statements about the growth-related benefits of purchasing the companies, such as the statement that "[w]e complement our organic growth strategies by taking a targeted and opportunistic approach to acquisitions."

The same is true of the integration-related statements. It strains credulity to infer that, even if defendants were using the acquisitions as a Band-Aid to mask poor growth, they didn't also eventually intend to integrate the companies into Lightspeed. Nath's only counter – that Lightspeed was slow to integrate the companies – says nothing about defendants' beliefs or opinions. The amended complaint also does not plead any non-conclusory facts supporting a conclusion that defendants did not "reasonably believe[ ] ... integration efforts were well underway" at the time they stated such efforts were underway.

Finally, despite Nath's arguments to the contrary, the confidential witness testimony does not render falsity a factual issue. To show a speaker's present intent when making a statement, a securities-fraud plaintiff can rely on confidential witnesses, but the testimony must rise above mere "speculation and conclusory allegations." Local No. 38 Int'l Bd. of Elec. Workers Pension Fund v. Am. Exp. Co., 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010); see also In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326 (S.D.N.Y. 2011). The confidential witnesses were all mid- to low-level employees during the class period and were not alleged to have ever interacted with either individual defendant, except at the above-mentioned townhalls. They provide no independent basis for concluding defendants did not believe their statements.

## CONCLUSION

For these reasons, defendants' motion to dismiss [35] is GRANTED. The case is DISMISSED.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 606108

## Footnotes

1    There is one statement in the amended complaint, to which Nath's brief refers only in passing, that "[f]or the year, subscription revenue grew to $119.3 million, an increase of 51%, largely due to strong organic growth." It is possible that the Spruce Report's math suggests this statement is false or misleading. Nath, however, does not make such an argument, and I therefore do not consider it. See Manhattan Realty Co. 1, LP v. 155 Chambersfood Inc., No. 24-cv-00085, 2025 WL 358925, at \*4 (E.D.N.Y. Jan. 31, 2025). Regardless, it is not plausible from the complaint that this statement alone is material, not to mention that it caused investors to suffer losses. See Kleinman v. Elan Corp., 706 F.3d 145, 152 (2d Cir. 2013).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.