**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs and the Class*

[additional counsel on the signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CRAIG NOWAKOWSKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AXT, INC., MORRIS S. YOUNG, and GARY L. FISCHER,<br><br>Defendants. | ) | Case No. 3:24-cv-02778-MMC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL<br><br>Judge: Hon. Maxine M. Chesney<br>Action Filed: May 6, 2024 |

Lead Plaintiff Charles Grubb and name plaintiff Craig Nowakowski ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding AXT, Inc. ("AXT" or the "Company"), and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased the publicly traded AXT common stock between March 23, 2021 and April 3, 2024, inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2. AXT is a NASDAQ-listed materials science company, with nearly all of AXT's revenue generated by its subsidiary, Beijing Tongmei Xtal Technology Co., Ltd. ("Tongmei") in China. During the Class Period, AXT heavily promoted its "strategic plan" to list Tongmei on the Chinese stock market, presenting it as a significant opportunity that would bring substantial benefits to AXT and its investors.

3. Despite AXT's repeated assurances to investors that its Chinese subsidiary, Beijing Tongmei Xtal Technology Co., Ltd. ("Tongmei"), was making substantial progress toward listing on the Shanghai Stock Exchange's STAR Market, the true status of the IPO was

far more precarious. On August 1, 2022, the China Securities Regulatory Commission ("CSRC")[1] formally accepted for review the amended version of Tongmei's IPO prospectus. Just nine days later, however, the CSRC issued an inquiry letter raising serious concerns about a trade secret dispute and related criminal investigation involving Tongmei—specifically asking whether a case had been established or was likely to be established, whether it constituted a corporate crime, and whether it posed an obstacle to the IPO.

4. The CSRC's targeted inquiry came on the heels of similar questions posed by the Shanghai Stock Exchange during its earlier rounds of review. In those inquiries, the SSE had explicitly asked Tongmei to disclose the source of its core technologies, whether those technologies originated from research by personnel at prior employers, and whether there was any dispute or potential dispute with any third party. In response, Tongmei denied the existence of any trade secret infringement or any actual or potential dispute. Tongmei claimed that its technologies were independently developed and asserted there were no disputes or potential disputes with any party. Tongmei's legal counsel and IPO sponsor echoed these denials in formal legal opinions submitted alongside the reply.

5. These statements were materially false and misleading. In reality, as early as October 2021, the Yucheng City Public Security Bureau had formally initiated a criminal investigation into Tongmei and a former Guojing employee now working for Tongmei, based on allegations of trade secret theft involving pyrolytic boron nitride ("pBN") technologies. The investigation was later transferred to the Yucheng Procuratorate for potential prosecution. By the

[1] The CSRC is the primary government agency that regulates China's securities and futures markets. The CSRC is similar to the U.S. Securities and Exchange Commission ("SEC"). The CSRC had the ultimate power to approve or reject a company's application for public listing in China.

time the SSE and CSRC issued their inquiries, Tongmei and AXT were fully aware of this criminal investigation and the material threat it posed to the IPO—yet chose to conceal it.

6. Under Chinese law, an ongoing criminal investigation into a company or its key personnel categorically disqualifies that company from registering its shares on the STAR Market. Accordingly, the CSRC's request for information regarding the trade secret dispute and criminal investigation went to the heart of Tongmei's eligibility to list.

7. Yet Tongmei never responded. To date, more than 1,000 days have passed since the CSRC issued its inquiry on August 10, 2022, and Tongmei has yet to provide a response. This extraordinary silence—far exceeding the normal one-to-two-month response window—has effectively halted the IPO process. Indeed, Chinese regulatory records confirm that Tongmei's application has been suspended as of March 31, 2025, due to outdated financial statements, a procedural byproduct of the stalled process. The failure to respond to the CSRC, coupled with the pending criminal prosecution, has definitively foreclosed Tongmei's ability to proceed with its IPO.

8. Despite this, AXT continued throughout the Class Period to tout the "ongoing" status of Tongmei's IPO, representing to investors that the company "hopes to accomplish this goal in the coming months." These statements were materially false and misleading. In reality, Tongmei had not only failed to meet the legal prerequisites for listing but had also misled Chinese regulators about the existence of a significant legal dispute and failed to even respond to the CSRC's direct inquiry—thereby abandoning the IPO in everything but name. Tongmei's effective abandonment created a specific known material risk to trigger a redemption right, which would materially adversely impact Tongmei's operation. AXT's failure to disclose this abandonment and the specific, material risk accompanying it, along with its concurrent portrayal of the IPO as a

viable, active endeavor, misled investors and artificially inflated AXT's stock price throughout the Class Period.

9. On April 4, 2024, market analyst firm J Capital Research ("J Capital") published a report exposing, for the first time, the true status of Tongmei's IPO. On this adverse news, AXT's stock price dropped $1.73 per share, or 34.94% to $3.22 per share on April 4, 2024—devastating investors. AXT's stock dropped an additional 3.4% or $3.11 per share the next day.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

13. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Lead Plaintiff Charles Grubb, as set forth in his PSLRA Certification on file with the Court (Dkt. Nos. 17-3, 17-4) and incorporated by reference herein, purchased AXT common

stock during the Class Period and has suffered damages as a result of the violations of the federal securities laws alleged herein.

15. Name plaintiff Craig Nowakowski, as set forth in his PSLRA Certification on file with the Court (Dkt. No. 1-1) and incorporated by reference herein, purchased AXT common stock during the Class Period and has suffered damages as a result of the violations of the federal securities laws alleged herein.

16. AXT is incorporated in Delaware and its head office is located at 4281 Technology Drive, Fremont, California 94538. AXT's common stock trades on the NASDAQ exchange under the ticker symbol "AXTI." Defendant AXT describes itself as a "worldwide materials science company that develops and produces high-performance compound and single element semiconductor substrates, also known as wafers. Two of our consolidated subsidiaries produce and sell certain raw materials some of which are used in our substrate manufacturing process and some of which are sold to other companies."

17. As stated below, nearly all of the Company's revenue was generated by Tongmei, AXT's operating subsidiary in China. Given the importance of Tongmei, its operations and oversight were closely monitored by Defendants. In November 2020, AXT announced that the Company intended to list Tongmei on the Shanghai Stock Exchange's "Sci-Tech innovAtion boaRd", which is known as the "STAR Market."

18. Defendant Morris S. Young ("Young") served as the Company's Chief Executive Officer ("CEO") and the Chairman of the Board of Directors throughout the Class Period. He graduated from the Metallurgical Engineering Department of National Cheng Kung University in Taiwan and obtained a bachelor's degree, and then studied in the Metallurgical Engineering Department of Syracuse University in the United States and obtained a master's degree. He

obtained a doctorate from New York University in 1975. Defendant Young has also been the legal representative and chairman of the board of directors of Tongmei since 2009 and signed all the prospectuses filed with the Shanghai Stock Exchange and the CSRC on behalf of AXT and also as a director of Tongmei in connection with Tongmei's application for listing on the STAR Market. According to Tongmei Chinese Prospectus (August 1, 2022 Version), Defendant Young holds many global patents.

19. Defendant Gary L. Fischer served as the Company's Chief Financial Officer ("CFO") and Corporate Secretary throughout the Class Period.

20. Defendants Young and Fischer are collectively referred to herein as the "Individual Defendants."

21. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

22. AXT is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

23. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

24. AXT and the Individual Defendants are collectively referred to herein as "Defendants."

# I. SUBSTANTIVE ALLEGATIONS

## a. Company Background

25. AXT, founded in 1986, is a materials science company specializing in the development and production of high-performance compound and single-element semiconductor substrates, commonly known as wafers. According to AXT's SEC filings, AXT's wafers are used in applications where traditional silicon substrates cannot meet the performance needs of semiconductor or optoelectronic devices, such as LED lighting and chip-based lasers. AXT purportedly adds value through research, development, and production of specialty material wafers, offering two key product lines: specialty material substrates and raw materials integral to their production, including purified gallium, InP based material and pBN crucibles. AXT manufactures all of its products in the People's Republic of China ("China").

26. AXT holds a controlling stake in Tongmei and a majority of its Board of Director positions, as noted in AXT's 2020 Annual Report filed on Form 10-K with the SEC ("2020 Annual Report"). Tongmei employs 1,396 of AXT's 1,399 employees (99.8%) as of December 31, 2021,

according to the prospectus filed with the Shanghai Stock Exchange and submitted to the CSRC on August 1, 2022, in connection with Tongmei's application for an IPO on the STAR Market ("Tongmei Chinese Prospectus (August 1, 2022 Version)")[2] and AXT's 2021 annual report filed on Form 10-K with the SEC on March 15, 2022 ("AXT 2021 Annual Report"), and generated 97% of AXT's $137.4 million revenue in 2021 (RMB 857,345,200, approximately US$132,880,533), showing its critical role in AXT's financial performance.

27. According to Tongmei Chinese Prospectus (August 1, 2022 Version), Tongmei is a "world-renowned semiconductor materials technology company", mainly engaged in indium phosphide substrates, gallium arsenide R&D, production and sales of substrates, germanium substrates, pBN materials and other high-purity materials. Tongmei Chinese Prospectus (August 1, 2022 Version) also stated that "[its] PBN and other high-purity materials guarantee the supply of high-quality raw materials for our semiconductor substrate products from the source, and are widely used in compound semiconductor, OLED, LED and other industries."

28. Pyrolytic boron nitride, or pBN, is a high-purity ceramic with excellent chemical resistance and strength at high temperatures. pBN is used in crucibles to produce compound semiconductors and molecular-beam epitaxy, which make use of its characteristics. The extent of potential uses of pBN is expanding, and such uses include high functional PG (pyrolytic graphite)/PBN heaters for semiconductor fields and copper indium gallium diselenide based thin film for photovoltaic power generation.

29. Tongmei's pBN operations, including its subsidiary Beijing BoYu Semiconductor Vessel Craftwork Technology Co., Ltd. ("BoYu"), 100% owned by Tongmei and focused on pBN material R&D and sales, are a signifcnat component of its business, both as an essential material

[2] The original Chinese version of the Tongmei Chinese Prospectus (August 1, 2022 Version), which was filed with CSRC on August 1, 2022 is available at https://static.sse.com.cn/stock/disclosure/announcement/c/202208/001065_20220801_0CSP.pdf. The English language translation, which was filed by AXT with the SEC as Exhibit No. 99.1 to Form 8-K on August 2, 2022, is available at https://www.sec.gov/Archives/edgar/data/1051627/000155837022011572/axti-20220801xex99d1.htm

in its substrate manufacturing process and as a high-demand product sold in the open market, and constituted a significant and growing portion of AXT's and Tongmei's revenue. In 2021, pBN crucibles contributed 6.44% of Tongmei's revenue, with crucible recycling and other pBN sales adding 5.88%, per the Tongmei Chinese Prospectus. AXT's 2020 and 2021 Annual Reports stressed pBN's role in driving revenue growth, with a 14.5% increase in 2020 and a 44.1% increase in 2021, largely due to demand for pBN crucibles and pBN-based OLED manufacturing tools, particularly in China, where customer revenue grew by 31.2% in 2020 and 91.7% in 2021.

30. As the Tongmei Chinese Prospectus (August 1, 2022 Version) noted, Tongmei founded a pBN materials company in 2002 to "ensure sufficient and controllable supply of raw materials." In its "Main Products" section, the Prospectus also stated that "[Tongmei] has formed a product matrix 'centered on semiconductor substrates, with PBN materials and high-purity materials as two wings' to meet the diverse needs of customers in the semiconductor field." The Prospectus further acknowledged that pBN crucibles were a raw material "featuring significant technological complexity, high added value, and a lack of stable supply in the Chinese Mainland." It highlighted that Tongmei had not only "achieved self-sufficiency", but the Company also "sells the remaining production capacity to generate revenues and profits for the Company," thereby indicating that pBN materials and technologies have tremendous profit prospects.

31. Additionally, in Tongmei Chinese Prospectus (August 1, 2022 Version), in response to the standard set forth by the Tentative Provisions for Application for and Recommendation of Listing of Enterprises on the Sci-tech Innovation Board of the Shanghai Stock Exchange (April 2021 Revision) regarding whether Beijing Tongmei qualifies as a high-tech innovative company eligible for listing on the STAR Market, Tongmei stated that, as a "Main Basis" that,

> As of June 30, 2022, we own 61 patents for inventions, including 52 domestic patents and 9 foreign patents, a total of 52 patents after deduplication. ***52 patents*** (after deduplication) for invention (including patents relating to national defense) owned by us c***onstitute our core technologies and relate to our revenues from***

***main business***, which are used in single crystal growth, wafer cutting, edge trimming, grinding, polishing, cleaning and other processes***, the production of PBN materials*** and other high-purity materials, and other main processes.

(Emphasis added.)

32. According to Tongmei Chinese Prospectus (August 1, 2022 Version), 2 out of 12 primary categories of the core technologies that Tongmei owned at the time when the Tongmei Chinese Prospectus (August 1, 2022 Version) was filed were directly related to pBN technologies:

| | | | | | |
|---|---|---|---|---|---|
| Pyrolytic boron nitride chemical vapor deposition technology | Pyrolytic boron nitride chemical vapor deposition technology | Independent research and development | International leading | Mass production | Patent protection |
| | Technology for the preparation of boron nitride-boron carbide-graphite composite heating elements for high-temperature electric heating | Independent research and development | Domestic leading | Mass production | Patent protection |
| Chemical vapor deposition reactor manufacturing technology | Design technology of vapor deposition furnaces for the preparation of ultra-high-purity pyrolytic boron nitride products | Independent research and development | International leading | Mass production | Patent protection |

33. Additionally, according to Tongmei Chinese Prospectus (August 1, 2022 Version), 5 out of 52 domestic patents Tongmei held at the time when Tongmei Chinese Prospectus (August 1, 2022 Version) was filed were directly related to pBN technologies.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 35 | Beijing Boyu, Chaoyang Boyu and Tianjin Boyu | A kind of low-texture pyrolytic boron nitride (PBN) thin-walled container and preparation method thereof | Invention | 2009100923025 | July 27, 2011 | Original acquisition | N/A |
| 36 | Beijing Boyu, Chaoyang Boyu and Tianjin Boyu | A surface repair method of pyrolytic boron nitride crucibles after use | Invention | 2012102875225 | April 16,2014 | Original acquisition | N/A |
| 37 | Beijing Boyu, Chaoyang Boyu and Tianjin Boyu | A kind of boron nitride/boron carbide/graphite compound heating element for high-temperature electric heating | Invention | 2012102875367 | June 4, 2014 | Original acquisition | N/A |
| 38 | Beijing Boyu, Chaoyang Boyu and Tianjin Boyu | Vapor deposition furnace and method for preparing pyrolytic boron nitride products | Invention | 2012103084264 | January 28, 2015 | Original acquisition | N/A |
| 47 | Beijing Boyu, Tianjin Boyu, Chaoyang Boyu | A boron nitride crucible mold, preparation method and demoulding method | Invention | 2022101498413 | May 20, 2022 | Original acquisition | N/A |

34. In the meanwhile, at the time the Tongmei Chinese Prospectus (August 1, 2022 Version) was filed with the CSRC, 2 out of the 10 "main undergoing research and development projects" that Tongmei was conducting were directly related to pBN technologies:

| | | | | | | |
|---|---|---|---|---|---|---|
| 7 | Research and development of PBN materials | Development of cold-necked PBN crucibles for Al vapor deposition | Efficient production of OLED metal vapor deposition crucibles | International advanced | Commercial stage | Boyu R&D team |
| 8 | | Development of boron nitride vessels with low-texture CVD pyrolysis | Preparation method for low-cost and high-efficiency production of PBN materials | International advanced | Commercial stage | Boyu R&D team |

35. Defendant Young has served as the legal representative and Chairman of Tongmei's Board of Directors since 2009. Additionally, according to Tongmei Chinese Prospectus (August 1, 2022 Version), Defendant Young also was the legal representative for 9 of the 10 subsidiaries of Tongmei, including Beijing BoYu.

36. According to AXT's SEC filings during the Class Period, such as the AXT 2021 Annual Report and the Tongmei Chinese Prospectus (August 1, 2022 Version), Beijing BoYu was a subsidiary 100% directly owned by Beijing Tongmei. The Tongmei Chinese Prospectus (August 1, 2022 Version) further described BoYu as "mainly engaged in the research and development, production, and sales of PBN materials, falling within the scope of [Beijing Tongmei's] main business."

37. In China, the legal representative is the individual who legally represents a company in civil matters and is authorized to act on its behalf. Every company must have a legal representative, typically the chairman of the board, executive director, or general manager. The role of the company's legal representative is of great importance. According to the Civil Code of the People's Republic of China, the legal consequences of civil activities conducted by the legal representative in the name of the legal person shall be borne by the legal person. The actions of a company's legal representative, even if they exceed the limits of their authority set by the company's articles of association or internal regulations, are generally still binding on the company and cannot be asserted against bona fide third parties. The legal representative can be held personally liable for actions taken on behalf of the company, especially if those actions violate the law or the company's own articles of association. That individual is a key figure involved in all aspects of the company's day-to-day operations, possessing significant power and authority that

can determine the company's direction. The legal representative's information, including their name and position, is officially recorded with the State Administration for Market Regulation ("SAMR") and is publicly available on the company's business license.

38. Defendant Young played a central role in Tongmei's operations and technological advancements. As described below, he personally participated in Tongmei's IPO process, was authorized by AXT to promote Tongmei's IPO, and signed all of Tongmei's prospectuses filed with the Shanghai Stock Exchange and the CSRC, acting both on behalf of AXT (Tongmei's controlling shareholder) and in his capacity as Chairman of Tongmei's Board.

39. As the legal representative for Tongmei and nine of its ten subsidiaries, including BoYu, Young is authorized under China's Civil Code to act on their behalf, bearing legal responsibility for their actions. His decisions are binding on the companies, even if exceeding internal authority limits, and he is personally liable for unlawful actions.

40. Furthermore, Defendant Young was listed as the one of the four "Core Technicians" in Tongmei Chinese Prospectus (August 1, 2022 Version) and held numerous global patents. He has been leading Tongmei's technology advancement and been extensively and personally involved in Tongmei's technology research and development. According to Tongmei Chinese Prospectus (August 1, 2022 Version),

> Under the leadership of Dr. MORRIS SHEN-SHIH YOUNG, the Company has educated and built a technology team featuring comprehensive academic backgrounds and rich industry experiences, providing talent guarantee for the Company to continuously make innovation and keep technology advancement.

41. Tongmei Chinese Prospectus (August 1, 2022 Version) further stated that

> Since the establishment of Tongmei Limited in 1998, YOUNG has led the technology team to successfully develop the VGF method for the growth of gallium arsenide, indium phosphide and germanium single crystals. He has also guided the successful development of the relevant substrate preparation process, determined the basic technical route and the selection of key equipment and consumables, and laid a foundation for the commercial scale production of the foregoing three types of epitaxial out-of-box single crystal substrate materials for Beijing Tongmei. In recent years, he has guided the growth of 8-inch gallium arsenide single crystals

> and realized the growth of the first semi-conductive 8-inch gallium arsenide single crystal bar, and successfully processed it into an epitaxial out-of-box substrate sample, which has been sent to our customer for verification. He has also guided the growth of 6-inch indium phosphide single crystals, grown the 6-inch semi-conductive indium phosphide single crystal bars and has obtained epitaxial out-of-box substrates, which have been delivered to our customer. He has guided the improvement of the annealing process of semi-insulating gallium arsenide wafers, and has realized the control of the oxygen content in the wafers through different annealing processes. He has been granted a number of invention patents in the United States, Europe and the Asia-Pacific region. As of the date of this Prospectus, he has been a co-inventor for 9 invention patents.

### b. AXT's Strategic Plan to List Tongmei on the STAR Market and Defendants' Extensive Involvement

42. On November 16, 2020, after the market hours, AXT published a press release ("November 16, 2020 Press Release") announcing a "strategic plan to access China's capital markets," aiming to list Tongmei on China's STAR Market, an exchange established by the Chinese government to support innovative companies. Explaining the importance of this plan to AXT and its shareholders, Defendant Young emphasized that after largely completing the relocation to China, AXT was positioned to seize the opportunities presented by "some of the biggest, most influential technology trends of the next decade." To capitalize on these opportunities, AXT needed additional cash. Listing on the STAR Market would "give[] us the ability to replenish our cash and increase our market value for our shareholders with minimal dilution," Young explained, adding that "[s]trengthening our balance sheet can give our customers greater confidence in our ability to support at scale the strong, expected demand for our strategic compound semiconductor materials." The November 16, 2020 Press Release named Defendant Fischer as the contact person.[3]

43. To enhance Tongmei's chances of being listed, Young also announced in the November 16, 2020 Press Release that AXT would conduct a corporate reorganization, merging

---

[3] Available at https://investors.axt.com/Investors/news/news-details/2020/AXT-Announces-Strategic-Plan-to-Access-Chinas-Capital-Markets/default.aspx#:~:text=FREMONT%2C%20Calif.%2C%20Nov.,support%20innovative%20companies%20in%20China.

two of its raw material companies—Beijing BoYu Semiconductor Vessel Craftwork Technology Co., Ltd. ("BoYu") and Nanjing JinMei Gallium Co., Ltd. ("JinMei")—into Tongmei, creating a diverse product portfolio under Tongmei's operations. This merger, he stated, would "make Tongmei an attractive company for the STAR Market and create incremental value for our shareholders." The merger was completed in December 2020.

44. Additionally, the November 16, 2020 Press Release also announced that to meeting the listing standard for Shanghai Stock Exchange's STAR Market, AXT and Tongmei entered investment agreements and would enter into additional agreements to secure approximately $50 million from certain private equity firms as investors in Tongmei "[i]n exchange for approximately a 7.14 percent minority interest in Tongmei." The November 16, 2020 Press Release explicitly noted that "***AXT's ability*** to retain these investments is contingent upon a successful completion of the STAR Market listing." (Emphasis added.) Specifically, the November 16, 2020 Press Release stated that,

> To qualify for a STAR Market listing, Tongmei is required to have multiple independent shareholders. The first major step in this process is engaging reputable private equity firms in China to invest funds in Tongmei. In exchange for approximately a 7.14 percent minority interest in Tongmei, private equity firms will invest approximately $50 million. The first tranche investment documents were executed on November 13, 2020 in China and the first tranche of approximately $22.5 million is expected to be received in late November or early December 2020. The second tranche of approximately $26.5 million is expected to fund in January 2021. The second tranche investment documents have not yet been executed. ***AXT's ability to retain these investments is contingent upon a successful completion of the STAR Market listing***. Tongmei would be required to sell a minimum of 10 percent of its equity in the public offering, bringing the total minority interest held publicly to approximately 17.14 percent, or greater if Tongmei elects to increase the offering above 10 percent.

(Emphasis added.)

45. Energized by the promising outlook presented by AXT in its November 16, 2020 announcement, investors responded enthusiastically, driving up demand for AXT common shares. This led to a share price increase from a closing price of $7.84 on November 16, 2020, to $9.67 at

the close of November 17, 2020, representing a 23.3% gain in one day.

46. On November 19, 2020, AXT filed a current report on Form 8-K with the SEC ("November 19, 2020 Form8-K")[4], providing more details on the investment agreements described in the November 16, 2020 Press Release. The November 19, 2020 Form 8-K stated that "[o]n November 13, 2020, AXT and Tongmei entered into two sets of definitive transaction documents" with several private equity investors in China, including Capital Increase Agreements and First and Second Supplemental Agreements. According to these agreements, in exchange for an approximately 7.14% minority interest in Tongmei, private equity firms will invest approximately $50 million in two tranches. In return, AXT and Tongmei granted these equity firms the right to redeem any or all of their shares at the original purchase price, without interest, in the event of a material adverse change or if Tongmei failed to achieve its IPO on the STAR Market by December 31, 2022. According to the announcement, the private equity firm investors in the first tranche had signed the agreements while the second tranche had not. Specifically, the November 19, 2020 Form8-K stated, in relevant part, that,

> Under the First Supplemental Agreements, Tongmei has agreed to use best efforts to complete certain restructuring steps by March 31, 2021 to facilitate the proposed listing of Tongmei's shares on a stock exchange in the People's Republic of China (the "Listing"). Under the First Supplemental Agreements and Second Supplemental Agreements, if the Listing has not been completed and the China Securities Regulatory Commission (the "CSRC") has not otherwise approved Tongmei's Listing application by December 31, 2022, then ***each Investor will have the right to require AXT to repurchase such Investor's Placement Shares*** at a price equal to the initial purchase price paid by such Investor, without interest. The investment is an "at-risk" investment and is not collateralized or supported by third party guarantees.
>
> (Emphasis added.)

[4] Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001051627/000155837020013991/axti-20201113x8k.htm

47. Defendant Fischer signed the November 19, 2020 Form8-K.

48. On December 31, 2020, AXT filed a current report on Form 8-K with the SEC ("December 31, 2020 Form8-K"), announcing that on December 25, 2020, the private equity firm investors in the second tranche had entered into the investment agreements with AXT and Tongmei. Defendant Fischer signed the December 31, 2020 Form8-K.[5]

49. On February 18, 2021, AXT filed a current report on Form 8-K with the SEC ("February 18, 2021 Form8-K"), reporting financial results for the fourth quarter and fiscal year, ended December 31, 2020. The February 18, 2021 Form8-K contained s section tilted "STAR Market Listing Update," which updated the market that in connection with Tongmei's IPO application, stating that "[i]n January 2021, AXT completed the private equity investment funding in Tongmei." According to the February 18, 2021 Form8-K, the private equity firms had invested approximately $49 million in exchange for an approximately 7.28 percent minority interest in Tongmei. Defendant Fischer signed the February 18, 2021 Form8-K.

50. On March 23, 2021, AXT filed its 2020 Annual Report. Both Defendants Young and Fischer signed the report. The report disclosed that the private equity firm investors' redemption rights were suspended until the Shanghai Stock Exchange or the CSRC rejected the application or Tongmei withdrew it if Tongmei's IPO application was submitted to and accepted by the Shanghai Stock Exchange for review by December 31, 2022. Specifically, the 2020 Annual Report stated, in relevant part, that:

> In exchange for an investment of approximately $49 million, the Investors received a 7.28% noncontrolling interest in Tongmei. Pursuant to the investment agreements ("Capital Investment Agreements") with the Investors, each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the

---

[5] Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1051627/000155837020014599/axti-20201225x8k.htm

> original purchase price paid by such Investor, without interest, in the event of a material adverse change or if Tongmei does not achieve its IPO on or before December 31, 2022. This right is suspended when Tongmei submits its formal application for IPO to the China Securities Regulatory Commission ("CSRC"). Tongmei currently plans to submit its formal application to the CSRC in the third quarter of 2021. However, if on December 31, 2022 the IPO application has been submitted and accepted by the CSRC or the stock exchange and such submission remains under review, then the date when such investor is entitled to exercise such redemption right shall be deferred to a date when such submission is rejected by the CSRC or stock exchange, or the date when Tongmei withdraws its IPO application.

51. In the 2020 Annual Report, Defendants also acknowledged, as a material risk factors pursuant to Item 105 of Regulation S-K, that "[a]ny redemptions could have a ***material adverse effect*** on our business, financial condition and results of operations." (Emphasis added.) All AXT's annual reports filed with the SEC during the Class Period had the same acknowledgement.

52. In December 2021, after completing the investment by Chinese equity firms and the merger of BoYu and Jinmei into Tongmei, Tongmei submitted its application, which was formally accepted for review by the Shanghai Stock Exchange on January 10, 2022. The acceptance of the application suspended the Chinese equity firms' right to terminate their investment and request redemption.

53. On the same day of January 10, 2022, AXT filed a current report on Form 8-K with the SEC ("January 10, 2022 Form8-K"), reporting that Shanghai Stock Exchange had accepted Tongmei's formal application to list its shares in an IPO on the STAR Market. Defendant Fischer signed the January 10, 2022 Form8-K. The January 10, 2022 Form8-K also disclosed that in connection with this IPO application, AXT, as the controlling shareholder of Tongmei, submitted 12 commitment documents along with Tongmei IPO application pursuant to the Chinese law and

Shanghai Stock Exchange rules ("Commitment Documents").[6] These Commitment Documents represented AXT's various representations to the Chinese government regarding its integrity and adherence to various trading rules. AXT subsequently published these Commitment Documents along with its 2021 Annual Report, which showed that Defendant Young signed these documents on behalf of AXT. The 2021 Annual Report also published the English language versions of the aforementioned form Capital Increase Agreements and First and Second Supplemental Agreements that AXT and Tongmei entered into with the private equity firm investors. These documents listed Defendant Young as the legal representative of Beijing Tongmei and as the authorized representative for AXT, demonstrating Defendant Young's personal involvement in effectuating these transactions with private equity firms to facilitate Tongmei's IPO.

54. On January 12, 2021, Defendant Fischer, on behalf of AXT, presented at the 23rd Annual Needham Virtual Growth Conference, a prominent event hosted by the investment bank and asset management firm Needham & Company, featuring presentations from nearly 500 public and private company management teams. AXT's presentation centered on its plan to list Tongmei on the STAR Market and its significance for AXT and its shareholders. Once again, AXT emphasized the benefits of the IPO, including an "attractive balance sheet [with] minimal

[6] These documents are Letter of Commitment on Share Lock-up, Letter of Commitment on the Shareholding Intention and Share Reduction Intention, Letter of Commitment on Plan for Stabilizing the Company's Stock Price within Three Years upon the Listing and the Restraint Measures, Letter of Commitment on Share Repurchase for Fraudulent Listing, Letter of Commitment on No False Record, Misleading Statement or Major Omission in the Prospectus, Letter of Commitment on Filling the Diluted Spot Return, Letter of Commitment on Restraint Measures for Nonperformance of the Commitments, Letter of Commitment on Avoiding Horizontal Competition, Letter of Commitment on Standardizing and Reducing the Related Transactions, Letter of Commitment on Avoiding the Capital Occupation and Illegal Guarantee, Statement and Letter of Commitment, Special Commitment Letter for Disclosure of Shareholders' Information and Verification of Retired Personnel of CSRC.

dilution," and the ability to "leverage[]/unlock[s] China assets" and to "strengthen[] AXT's business development positioning." AXT also revealed that investors were highly confident in the growth opportunities Tongmei's IPO could bring to AXT, leading Chinese private equity firms to have "oversubscribed" AXT's private offering of Tongmei shares. AXT further emphasized the "potential valuation of Tongmei at the STAR Market IPO represent[ing] significant upside."

55. In addition to Defendant Fischer's personal involvement in promoting Tongmei's IPO application, Defendant Young was also personally involved. According to the Tongmei Chinese Prospectus (August 1, 2022 Version), AXT's board of directors made a resolution on December 1, 2021, that it "authoriz[ed] the Chief Executive Officer, MORRIS SHEN-SHIH YOUNG … to be responsible for promoting matters in relation to [Tongmei's] Offering and listing on behalf of AXT." In fact, as stated below, Defendant Young even participated in Tongmei's internal investigation into its IP infringement for the purpose of preparing responses to the Shanghai Stock Exchange's inquiry. He personally signed Tongmei's "Reply to the Second Round Audit Inquiry Letter on Application for Initial Public Offering and STAR Market Listing of Shares by Beijing Tongmei Xtal Technology Co., Ltd.", misleadingly denying the existence of any potential dispute ("Tongmei's SSE Second Round Reply"). The English translations of Tongmei's SSE Second Round Reply and a supplemental legal opinion ("Supplemental Legal Opinion") containing similar misleading denials were filed on a current report on Form 8-K ("June 17, 2022 Form 8-K") by AXT with the SEC on June 17, 2022.[7] Defendant Fischer signed the June 17, 2022

---

[7] June 17, 2022 Form 8-K is available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1051627/000155837022010098/axti-20220617x8k.htm. The English translation of Tongmei's SSE Second Round Reply is available at https://www.sec.gov/Archives/edgar/data/1051627/000155837022010098/axti-20220617xex99d1.htm; the English translation of the Supplemental Legal Opinion is available at https://www.sec.gov/Archives/edgar/data/1051627/000155837022010098/axti-20220617xex99d2.htm. The original Chinese version of Tongmei's SSE Second Round Reply is

Form 8-K. Defendant Fischer signed the June 17, 2022 Form8-K. The certified English translations of (i) Shanghai Stock Exchange homepage, (ii) its Public Offering Tab, (iii) search result for searching Beijing Tongmei at the "Public Offering" section under "Status of Projects Under Review" section on Shanghai Stock Exchange website, and (iv) the Status of Projects Under Review page for Beijing Tongmei on Shanghai Stock Exchange website are attached hereto as Exhibits 1, 2, 3 and 4 hereto.

56. On August 1, 2022, after several rounds of reviews and inquiries, the Shanghai Stock Exchange gave preliminary approval and forwarded an amended version—the Tongmei Chinese Prospectus (August 1, 2022 Version)—to the CSRC for final review and determination. This approval was granted relying on Tongmei's and the Defendants' misleading representations in response to the Shanghai Stock Exchange's inquiries, as stated below.

57. On August 2, 2022, AXT filed a current report on Form 8-K with the SEC ("August 2, 2022 Form8-K"), reporting that "[o]n August 1, 2022, Tongmei's revised IPO application was accepted for review by the China Securities Regulatory Commission." The August 2, 2022 Form8-K provided the English language translation of the Tongmei Chinese Prospectus (August 1, 2022 Version), which was the version submitted to CSRC for review, as part of the August 2, 2022 Form 8-K. Defendant Fischer signed August 2, 2022 Form8-K. Defendant Young signed the Tongmei Chinese Prospectus (August 1, 2022 Version) as a director of Tongmei, representing that:

> [T]his Prospectus does not contain any false records, misleading statements or major omissions, and will assume any individual and joint legal liabilities for its authenticity, accuracy and completeness.

---

available at https://static.sse.com.cn/stock/disclosure/announcement/c/202206/001065_20220617_DN5Q.pdf; the Supplemental Legal Opinion is available at https://static.sse.com.cn/stock/disclosure/announcement/c/202206/001065_20220617_NBF2.pdf.

58. Additionally, Defendant Young also signed the Tongmei Chinese Prospectus (August 1, 2022 Version) as the authorized representative of AXT, Tongmei's controlling shareholder, representing on behalf of AXT that:

> The company hereby undertakes that there are no false records, misleading statements or major omissions in this Prospectus, and will assume any individual and joint legal liabilities for its authenticity, accuracy, and completeness.

59. On October 27, 2022, while announcing its financial results for the third quarter ended September 30, 2022, AXT updated investors on the progress of Tongmei's IPO application, stating that "[s]ubject to review and approval by the CSRC and other authorities, Tongmei hopes to accomplish this goal as early as Q4 2022."

60. During the Class Period, AXT's quarterly financial results reports filed on Form 8-K—approximately six pages each and filed every three months—each contained a section titled "STAR Market Listing Update," which reported the latest status of Tongmei's IPO application progress. Defendant Fischer signed all these forms, indicating his up-to-date knowledge of the Tongmei IPO progress. Additionally, AXT's quarterly reports filed on Form 10-Q and annual reports filed on Form 10-K with the SEC during the Class Period contained more detailed information updating the market on the latest status of Tongmei's IPO application progress. Defendants Young and Fischer signed all these forms, indicating their up-to-date knowledge of the Tongmei IPO progress.

61. Market analysts viewed Tongmei's listing as a significant factor in enhancing AXT's valuation.

62. On June 25, 2021, Craig-Hallum Capital Group published a research report on AXT titled "STARstruck: AXTI Trading At 30%+ Discount to Likely STAR Market Valuation" ("Craig-Hallum Report"). The Craig-Hallum Report stated, "we believe AXTI's valuation in the US is likely to significantly increase as Tongmei's STAR Market listing approaches." In the "Investment Highlights" section, the report extensively analyzed Tongmei's listing, relying on statistical analysis comparing the valuation of a similar company that progressed faster with its

STAR Market listing. The report concluded that if Tongmei accomplished the listing on the STAR Market, "we see as much as 200% upside potential to AXT[]'s stock."

63. On October 28, 2022, Needham published an analyst report titled "Despite Macro Headwinds, AXTI Appears Oversold; Reduce PT to $6 & Reit Buy." In the report, Needham highlighted that Tongmei's successful IPO by the end of 2022 would be a key factor for a "bull" case on AXT, while failure to list would contribute to a "bear" case. Despite the business challenges AXT was facing for the coming year, Needham reaffirmed its "Buy" rating precisely because Tongmei's anticipated public offering in Q4 2022 would allow "its tangible book value to grow and to provide stronger valuation support to the stock."

**c. <u>Tongmei's IP Infringement Investigation and Criminal Prosecution; AXT Concealment of Material Information and Significant Risks</u>**

64. Throughout the Class Period, AXT, Inc. promoted the significant benefits of its subsidiary Beijing Tongmei Xtal Technology Co., Ltd.'s (Tongmei) planned initial public offering (IPO) on the Shanghai Stock Exchange's STAR Market, while concealing a material trade secret infringement issue that led to an ongoing criminal investigation and a subsequent pending prosecution. This investigation and the subsequent pending prosecution effectively blocked Tongmei's IPO under Chinese law, and thus posed a significant risk that private equity firm investors would request redemption of their investment in Tongmei, which could cause a material adverse impact on Tongmei.

65. According to Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures"), promulgated by the CSRC in 2020 and applicable to Tongmei, a company is prohibited from registering its shares to trade on the STAR Market if "a judicial authority has established a case against and is investigating the company for a suspected crime."[8] The successor regulation, the *Measures for the Administration of Securities Issuance Registration*

---

[8] China's judicial authorities include courts, procuratorates, public security agencies, national security agencies, judicial administrative agencies, notary agencies, etc.

*of Listed Companies*, which replaced the earlier STAR Market Registration Measures in February 2023, contains an identical provision.

66. This means that under the CSRC rules applicable to Tongmei during the Class Period, the very existence of an ongoing criminal investigation and subsequent pending prosecution, by themselves, prevented Tongmei from registering its shares to trade on the STAR Market before the final adjudication of such prosecution.

67. Despite these risks, AXT and Tongmei failed to disclose the investigation in any SEC filings, Tongmei's prospectus, or other public announcements during the Class Period, misleading U.S. investors who relied on AXT's representations.

68. According to the Chinese-language news article published by the *Economic Herald*, titled "Exclusive: Obstacles for Beijing Tongmei Xtal's IPO as Investigation Concludes in the 'Shandong Guojing Trade Secret Infringement Case' - Criminal Prosecution Pending" and published on March 13, 2023 ("Economic Herald Article")[9] —an article that the market research firm J Capital Research cited and provided a hyperlink to in its April 4, 2024 report on AXT as stated below—in May 2019, Tongmei hired a Mr. Zhang [given name withheld][10], a former employee of its competitor, Shandong Guojing New Materials Co., Ltd. ("Guojing"). Mr. Zhang left Guojing in October 2018 and brought with him trade secrets related to pBN materials and pBN technologies that he had learned there. Tongmei used these trade secrets to quickly develop certain pBN products.

69. According to the Economic Herald Article, while he was working at Guojing, Mr.

---

[9] Defendants submitted a certified English translation of the Economic Herald Article in support of their Motion to Dismiss the First Amended Complaint (Dkts. 53, 53-4), and relied on the contents of the article as true. Plaintiffs independently retained a certified translation agency to review the translation submitted by Defendants. The agency made minor corrections and re-certified the translation. Plaintiffs do not dispute the accuracy or truthfulness of the contents reported in the article. Except for the minor corrections made by Plaintiffs' translation agency, Plaintiffs adopt Defendants' version of the translation and hereby submit Plaintiffs' certified version of the translation, along with a redline showing the corrections made to Defendants' version, attached hereto as Exhibit 5.

[10] In Chinese news reports, when individuals are involved in negative stories, they're often referred to by their surname followed by "mou" (某) or " mou mou" (某某) to protect privacy.

Zhang was responsible for R&D work on pBN and pyrolytic graphite for Guojing, and participated in the development of core products and processes such as the PBN-PG composite heater, PBN holders, and PG coatings. In May 2019, Mr. Zhang joined Beijing Tongmei, where he was responsible for the development of the same products. Tongmei utilized the trade secrets Mr. Zhang acquired while working at Guojing and achieved these products' manufacturing and market promotion in just 3 months, while these proprietary technologies would typically require at least 3-5 years of research. The Economic Herald Article noted that Tongmei's SSE Second Round Reply confirmed this timeline, stating that its PBN-PG composite heater technology progressed from testing in March 2019 to prototype production by May 2019, corroborated Guojing's allegations. The Economic Herald article also reported that in 2021, while Tongmei underwent an equity restructuring, Mr. Zhang was rewarded with shares, less than two years after joining Tongmei. The Economic Herald further reported that according to Tongmei's prospectus, Mr. Zhang was one of the 13 partners in Tongmei's employee shareholding platform, Boyu Hengye, holding a 3.5714% stake in Boyu Hengye. Boyu Hengye, in turn, holds 637,050 shares of Tongmei Xtal. This means that Mr. Zhang indirectly holds 22,800 shares of Tongmei.

70. According to the Economic Herald Article, upon discovering Tongmei's infringement:

71.

> "[i]n September 2021, Shandong Guojing filed a report with the Yucheng Public Security Bureau, alleging that ***Zhang [Name Withheld] and Beijing Tongmei Xtal*** had infringed on its trade secrets. On October 13, 2021, Yucheng Public Security Bureau deemed the case met the criteria for a formal investigation and initiated one.

(Emphasis added.)

72. The Economic Herald Article also published an image of the Notice of Case Initiation that Yucheng Public Security Bureau issued on October 13, 2021, which stated that:

> ***In the case of Shandong Guojing trade secret infringement***, this Bureau determines that criteria for case initiation have been met and ***an investigation has been instituted***.

(Emphasis added.)

<table>
<tr><td>Original Chinese Copy</td><td>English Translation as shown in Exhibit 5</td></tr>
<tr><td>
立案告知书<br>
[redacted]：<br>
山东国晶公司被侵犯商业秘密 一案，我局认为 符合立案条件 ，现 已立案侦查 。<br>
特此告知。<br>
二〇二一年十月十三日<br>
本告知书已收到。<br>
被告知人： 年 月 日 时<br>
此联交被告知人<br>
鹰眼IPO观察</td>
<td>
Notice of Case Initiation<br>
To ______:<br>
In the case of Shandong Guojing trade secret infringement, this Bureau determines that criteria for case initiation have been met and an investigation has been instituted.<br>
So noticed,<br>
/stamp/ Yucheng Public Security Bureau<br>
Yucheng Public Security Bureau<br>
October 13, 2021<br>
This notice has been received<br>
by ______ Date and Time:<br>
THIS COPY TO RECIPIENT</td></tr>
</table>

73. However, the Economic Herald Article redacted the name of the recipient of the Notice of Case Initiation ; nor did the article report who the recipient of this notice was. The recipient could be any party relevant to the case, including Guojing, Tongmei, or Mr. Zhang. Furthermore, the notice did not mention all the parties to the Shandong Guojing trade secret infringement case, except for explicitly mentioning the dispute regarding Guojing's trade secret infringement. Instead, the Economic Herald Article reported that "In September 2021, Shandong Guojing filed a report with the Yucheng Public Security Bureau, alleging that ***Zhang [Name Withheld] and Beijing Tongmei Xtal*** had infringed on its trade secrets". (Emphasis added.) The article also noted that:

> [T]he investigation in the "Shandong Guojing trade secret infringement case" has concluded. The investigation file has been transferred to the Yucheng Procuratorate, though the exact time for commencement of prosecution remains unknown.

74. However, independently, Tongmei's SSE Second Round Reply stated that it received a relevant Report Letter regarding this IP infringement. In this letter, "[t]he reporting party held that ***the Issuer [i.e. Tongmei] and the involved employee*** were suspected of infringing the trade secret of the reporting party." Specifically, Tongmei's SSE Second Round Reply, in relevant parts, stated that,

> The Company received a relevant Report Letter, alleging that: an involved employee of the Company participated in the research and development of PBN-PG composite heaters, PG process products, PBN clamping rods, and other core products during his employment at the reporting party, hence acquired core technologies of the reporting party, while such technology information was trade secret of the reporting party. At present, the involved employee is working for the Issuer and has acquired shares in the Issuer. ***The reporting party held that the Issuer and the involved employee were suspected of infringing the trade secret of the reporting party.***
>
> After self investigation by the Company into the reported matter above, the Company considers that all the core technologies above are developed independently with clear source, and therefore there is no infringement of the trade secret or other intellectual property rights of the reporting party.
>
> ***
>
> Pyrolytic graphite (PG), PBN-PG composite heater and PBN clamping rod described in the Report Letter belong to the products of Beijing Boyu, a controlled subsidiary of the Company, and do not involve technologies and products in the field of semiconductor substrates and high-purity materials, nor are they the main products in the field of PBN such as PBN crucibles.
>
> (Emphasis added.)

75. Tongmei's own statement confirmed that both Tongmei and the "involved employee," i.e., Mr. Zhang, were alleged to have infringed the reporting party's trade secrets.

76. Another Chinese language article, titled "*After more than 14 months of submitting the registration, the approval still remains elusive. Why is Beijing Tongmei's IPO journey to listing so long and fraught with difficulties?*" published by Koukoucaixun on 163.com on October 19, 2023 ("Koukou Article," attached hereto as Exhibit 6)—which J Capital Research cited and

provided a hyperlink to in its April 4, 2024 report on AXT—provided further details on the reporting party and the IP infringement in which Tongmei and Mr. Zhang were engaged. The Koukou Article reported that the Report Letter that triggered the Shanghai Stock Exchange's inquiries to Tongmei was sent by Shandong Guojing. The Koukou report stated that in response to the Shanghai Stock Exchange's inquiries, although Tongmei acknowledged that this involved employee currently worked at Tongmei, Tongmei denied the allegations and stated the employee was not core technical personnel, and the trade secret in question was not Tongmei's core technology. The Koukou Article then reported that although the Shanghai Stock Exchange accepted this explanation from Tongmei and tentatively approved Tongmei's IPO, the trade secret infringement "became the biggest obstacle in the registration process, hindering the progress of its IPO".

77. The Koukou Article also reported that at the beginning of 2023, the public security bureau had concluded its investigation and transferred the relevant investigation materials to the procuratorate, pending prosecution. The Koukou article specifically pointed out that Tongmei had never mentioned the trade secret infringement case until the Shanghai Stock Exchange required Tongmei to explain. Specifically, the article reported that:

> It is worth noting that this case of trade secret infringement, which was filed for investigation as early as the end of 2021, was never mentioned in Beijing Tongmei's initial IPO application materials, until the emergence of the whistleblower letter.
>
> ***
>
> According to information obtained by koukoucaijing.com, as early as September 2021, Shandong Guojing filed a report with the Yucheng Public Security Bureau, accusing Zhang [Name Withheld] and Beijing Tongmei Crystal of infringing on its trade secrets. On October 13, 2021, the Yucheng Public Security Bureau determined that the case met the criteria for filing and initiated an investigation. From the time points of Shandong Guojing's reporting of the case and its subsequent filing, although both occurred before Beijing Tongmei submitted its IPO application, none of the multiple prospectuses published by Beijing Tongmei on the Shanghai Stock Exchange website mentioned the aforementioned trade secret dispute.

78. Based on Plaintiffs' independent investigation, both Economic Herald Article and Koukou Article were published by reputable journalists by reputable news channels.

79. The *Economic Herald* is owned by the Dazhong Newspaper Group and is a financial media outlet under the *Dazhong Daily*, the official newspaper of the Shandong Provincial Committee of the Communist Party of China.[11] Headquartered in Shandong Province, where Shandong Guojing is located, the *Economic Herald* was included in 2018 by the China Securities Regulatory Commission's (CSRC) Securities Information Service System as one of the 36 "major domestic financial newspapers" in China. [12]This system is accessible internally to the CSRC, and inclusion indicates the newspaper's significant influence in the capital market, with its data serving as a reference for regulatory authorities. The *Economic Herald* is recognized as Shandong's leading financial media brand and has received numerous accolades, including the "China Economic Newspaper Management Innovation Unit" award.[13]

80. The *Economic Herald* Article was written by Shi Xianliang for the *Economic Herald*'s "Eagle Eye IPO" channel. This channel focuses on IPO market trends, corporate listing information, and developments in Shandong's capital market. Shi Xianliang, the chief financial reporter for the *Economic Herald* and director of the Shandong Financial Research Institute, has over 15 years of industry experience.[14] His bylined reports cover critical regulatory policies and corporate IPO cases, such as new on-site inspection regulations and corporate compliance issues. Many of his investigative and analytical articles have been republished by major Chinese news platforms, including *The Paper*, *Sina*, *Tencent*, *Sohu Finance*, *Shangguan News*, and *Qilu Net*. Examples of his reporting include:

- A 39-year-old PhD developing "eyes" for cars in Hangzhou, recently applied for a Sci-Tech Innovation Board listing, with tax incentives and government subsidies exceeding net profits.

---

[11] https://qingdao.dzwww.com/jj/jtjj/
[12] https://mp.weixin.qq.com/s/a3gcKjr_Qi9vEgpunOl30w
[13] https://www.dengbaocn.cn/3062.html
[14] https://mp.weixin.qq.com/s/VMvTTdnUr0nONAYSjVO9iw

- Doubts over whether Hanbang Technology can pass its IPO review due to penalties imposed on its auditing firm for violations.
- Where did Yanzhou Coal Mining's 158 million yuan in fines and late fees go?
- Guobang Pharma's 2021 revenue reached 4.5 billion yuan, up 7%, solidifying its leading position in the pharmaceutical platform.
- Questions surrounding the financial data of Guangzhou Tongda Electric.
- After an IPO rejection, who is the actual controller of Shenzhen Xilong Tonghui?
- Reasons behind the first-day price drops of Chengda Biology and Rongmei Shares upon listing.
- A Shandong-based New Third Board company with a share price of only 0.17 yuan—what's the situation?
- Uncertainty over Damuren's IPO prospects due to an investigation of a major shareholder.
- Jianfa Shares, with 90 billion yuan in funds, seeks to raise an additional 8.5 billion yuan.
- Guo某某and four companies colluded to inflate drug prices, resulting in fines and confiscations totaling 362 million yuan, involving three listed companies.

81. Koukou Caixun (official website: https://www.koukoucaixun.com/) is registered as a news media entity on multiple third-party platforms, including: Sina Kandiandao, Baijiahao, Yidianhao, ZSKER Hexun, NetEase Hao, Sohu Hao, Jinrongjie (Financial News), Zhongfang Net, Caifu Hao, Xueqiu Hao, Zhaoshang Daran Hao, Tencent Qiehao, Hexun Mingjia, Fenghuang Dafeng Hao; Jinrongjie (Financial News), Zhaoshang Daran, Sina Weibo, Toutiao Hao, Tongshun Hao

82. Koukou Caixun is certified as a high-quality financial content creator on the NetEase News platform. It has published 1,117 reports, amassed 24,000 followers, and consistently tracks IPOs and listed company dynamics. As of now, Koukou Caixun has published 979 articles on the mainstream portal Sohu News, with 15,000 subscribers and a cumulative readership of 7.663 million views. Its WeChat public account, registered on September 24, 2022, and renamed "Koukou Finance" on September 26, 2022, has released 436 original articles with an average readership of around 10,000 per article. Since 2018, Koukou Caixun has frequently appeared among media outlets covering sensitive reports on IPO issuance data and public

sentiment dynamics.

83. The Koukou Article was authored by Chen Yuchuan. Based on Plaintiffs' independent investigation, over 30 of Chen's reports have been republished by mainstream financial media, including China Economic Net (hosted by Economic Daily, a comprehensive daily newspaper under the leadership and management of the Central Propaganda Department and sponsored by the State Council), China Financial Net (established in 2008, a professional portal for finance, securities, and stocks), Sina, Sohu, and other authoritative media. Examples of Chen's reports include:

- The full story of the Tiansheng Pharmaceutical scandal: Involving listing fraud, with Huaxi Securities earning 70 million yuan as the sponsor.
- Xinshikong Technology's IPO attempt: A cleverly designed capital scheme leads to collective enrichment of executives, sparking controversy over equity payments.
- Chaoyang Electronics, a family-run business previously rejected by the CSRC for suspected profit manipulation, attempts another IPO.
- A mysterious investor earns 60 million yuan in three months, raising questions about profit allocation in Quectel Wireless Solutions' IPO.
- With annual profits exceeding 100 million yuan but still struggling to pass registration after nearly two years, Changcheng Mixing's IPO attempt on the ChiNext board faces hurdles: Compliance issues with R&D investment?
- The collapse of the quintessential family business wealth creation myth!

84. Under Chinese law, a public security agency will initiate a formal investigation or so called "Establishment of a Case for Investigation" （立案侦查）only when it has identified criminal facts warranting criminal liability and received approval from the head of the public security agency at or above the county level. Therefore, the Yucheng City Public Security Bureau's decision to establish a case against Tongmei demonstrates that the Bureau had obtained evidence of Tongmei's IP infringement, justifying further investigation.[15]

[15] *See The Provisions on the procedures for handling criminal cases by public security agencies*, Article 178, available at https://www.gov.cn/zhengce/2021-12/25/content_5712867.htm.

85. However, throughout the Class Period, despite promoting the significant benefits of Tongmei's potential IPO, AXT concealed the ongoing criminal investigation and its attendant material risks of jeopardizing Tongmei's IPO plan in any of its SEC filings. Likewise, Tongmei concealed the criminal investigation in its prospectus, submitted to and accepted by the Shanghai Stock Exchange on January 10, 2022. After Guojing notified the Shanghai Stock Exchange of the trade secret theft on April 26, 2022, the Exchange sent an inquiry to Tongmei, requiring an explanation on "the legality of the source of [its] core technologies," according to Tongmei's SSE Second Round Reply. Specifically, Tongmei's SSE Second Round Reply shows that Shanghai Stock Exchange required Tongmei to explain,

> Q7. Legality and Compliance of Source of Core Technologies
>
> According to submissions, the main products of the Issuer include indium phosphide substrate, gallium arsenide substrate, germanium substrate, PBN material and other high-purity materials; based on technical R&D in past years, the Issuer has mastered core technologies in the fields of aforesaid products.
>
> ***The Issuer is required to explain the source of its core technologies, whether or not originated from the research contents and results of relevant personnel in their former employers, whether or not infringing upon trade secrets, patents or other intellectual properties of other entities and relevant proofs, and whether or not there is any dispute or potential dispute with relevant entity; if any dispute exists, please specify its progress and its influence on R&D, production and operation of the Company.***
>
> The Sponsor and the Issuer's Attorney are required to offer express verification opinions on the legality and compliance of source of core technologies of the Company.
>
> (Emphasis added.) [16]

---

Translations of relevant provisions were previously submitted as Docket No. 60-7 and is hereby resubmitted as Exhibit 12.

[16] In China, a sponsor, typically an investment bank, is an intermediary that assists a company during its initial public offering (IPO) process. Sponsors are responsible for a variety of tasks, including:

- Due diligence: Sponsors coordinate with other intermediaries to perform due diligence on the issuer

86. According to Tongmei's SSE Second Round Reply, following this directive, Tongmei conducted a "self investigation … into the reported matter." Following the investigation, Tongmei denied the existence of any IP infringement in Tongmei's SSE Second Round Reply. Specifically, Tongmei's SSE Second Round Reply stated, in relevant part, that:

> [T]he Company considers that all the core technologies above are developed independently with clear source, and therefore ***there is no infringement of the trade secret or other intellectual property rights of the reporting party***
>
> (Emphasis added.)

87. Additionally, in Tongmei's SSE Second Round Reply, in response to the inquiry into existence of disputes with Guojing, Tongmei responded that,

> (II) Whether or not infringing upon trade secrets, patents or other intellectual properties of other entities and relevant proofs, and whether or not there is any dispute or potential dispute with relevant entity
>
> ***The Company insists on the technology development mode of independent R&D; its core technologies are obtained through independent R&D and do not infringe upon trade secrets, patents or other intellectual properties of other entities, and there is no dispute or potential dispute with relevant entity***.
>
> (Emphasis added.)

88. Tongmei's SSE Second Round Reply also stated that Mr. Zhang "is not a core technician of the Company, nor is he a core technician in PBN and related fields" and Tongmei "did not grant him AXT shares and options after his enrollment."

89. However, the Supplementary Legal Opinion, submitted by Tongmei's counsel on

---

- IPO terms: Sponsors help set the terms of the IPO, such as the target amount to raise
- IPO process: Sponsors advise the issuer on the IPO process and help them comply with IPO requirements
- Prospectus: Sponsors draft the prospectus
- Regulatory authorities: Sponsors communicate with regulatory authorities
- Underwriting: Sponsors underwrite and issue shares

June 17, 2022, in conjunction with Tongmei's SSE Second Round Reply at the request of the Shanghai Stock Exchange in connection with its inquiry into the IP infringement, acknowledged, based on Tongmei's counsel's investigator, that "since joining the Company, the involved employee has been chiefly responsible for … the R&D of auxiliary PG and pBN-PG composite heaters,"—the exact technologies Guojing accused of being stolen. The Supplemental Legal Opinion also confirmed that "[a]ccording to the materials provided by the Company", Tongmei began research on PBN-PG composite heaters in June 2018 and completed development in May 2019.

90. Guojing had stated that developing such pBN technologies typically requires 3-5 years of research, emphasizing that these trade secrets hold strong business prospects and anticipating a significant future market. *See* the Koukou Article. Given the difficulty of developing the said technologies, Mr. Zhang's May 2019 arrival at Tongmei, and Tongmei's immediate development of the disputed technology, it was not surprising for the Bureau to find that the case met the conditions for "Establishment of a Case for Investigation" and initiated a criminal investigation into Tongmei.

91. The Supplemental Legal Opinion also confirmed that to prepare the opinion on the existence of any IP dispute, Tongmei's counsel interviewed Defendant Young, other executives, and technicians. However, despite the ongoing criminal investigation, based on these interviews, the Supplemental Legal Opinion endorsed Tongmei's position that Tongmei had not infringed on trade secrets or IP rights and had no "dispute or potential dispute with relevant entity." Specifically, the Supplemental Legal Opinion, in relevant part, stated that:

> **(II) Whether or not infringing upon trade secrets, patents or other intellectual properties of other entities and relevant proofs, and whether or not there is any dispute or potential dispute with relevant entity**
>
> According to the explanations and confirmations provided by the Company and core technicians, and as confirmed through the interviews with MORRIS SHEN-SHIH YOUNG, the Chairman of the Company, and VINCENT WENSEN LIU, the General Manager of the Company, by our lawyers, ***the Company insists on the technology development mode of independent R&D; its core technologies are***

> ***obtained through independent R&D and do not infringe upon trade secrets, patents or other intellectual properties of other entities, and there is no dispute or potential dispute with relevant entity.***

(Emphasis added.)

92. At the end of Tongmei's SSE Second Round Reply, Defendant Young represented that:

> I have carefully read the entire reply to the inquiry letter for Beijing Tongmei Xtal Technology Co., Ltd. in this audit, and hereby confirm that the reply contains no false records, misleading statements or major omissions, and I assume corresponding legal responsibility for the authenticity, accuracy, completeness and timeliness of the reply.

93. Tongmei's IPO sponsor submitted a letter similar to the Supplemental Legal Opinion along with SSE Second Round Reply to the Shanghai Stock Exchange on June 17, 2022, reiterating the same denials and omitting mention of the Bureau's ongoing criminal investigation.

94. Tongmei's denial of any "dispute or potential dispute with relevant party" was clearly contrary to the facts that Tongmei and Zhang were under a criminal investigation and Guojing had reported Tongmei and Zhang to the Shanghai Stock Exchange. Had Guojing believed Tongmei was not utilizing misappropriated trade secrets, it would not have reported Tongmei to the Shanghai Stock Exchange. Therefore, there was clearly at least a potential dispute between Tongmei and Guojing. The Shanghai Stock Exchange's specific inquiry into trade secret infringements and actual or potential disputes underscores their materiality, even if it is just a potential one, to the IPO evaluation process, as such issues could prevent preliminary approval and referral to CSRC for final review. The undisclosed investigation and Guojing's report posed significant risks to Tongmei's IPO approval and AXT's financial stability and created a specific risk of redemption. U.S. investors relied on AXT's SEC filings for accurate risk assessments. By denying any disputes or potential disputes, Defendants misrepresented material legal and operational risks, depriving investors of essential information needed to evaluate AXT's investment risks and the likelihood of Tongmei's IPO success, in direct contradiction to their affirmative representations.

95. A news article titled "Beijing Tongmei Prospectus Failed to Disclose Significant

Dispute Matters: Employees Suspected of Trade Secret Infringement Under Investigation Surprisingly Received Equity Incentives? | Haitong IPO Review" authored by Zheng Quan of the IPO Refinancing Group within Sina Finance Listed Company Research Institute, published on Sina Finance on May 17, 2024 ("Sina Article")—which was published after the end of the Class Period— reported that the employee of Tongmei involved in the IP infringement dispute at issue here was Mr. Zhang Jiawei. The journalist of the article reviewed records from China's Tianyancha and Qichacha[17] and compared the information disclosed by the Economic Herald Article and confirmed that the person was Zhang Jiawei. The Sina Article noted that five of Guojing's patents listed Zhang Jiawei as a joint inventor and removed his name from the patents after Zhang left Guojing. The Sina Article also noted misleading information in its SSE Second Round Reply, which stated that Tongmei did not grant Zhang any AXT securities, while in reality, Zhang indirectly held Beijing Tongmei via an employee shareholding platform. Specifically, the article reported that:

> Zhang Jiawei clearly held a 3.5714% stake in Boyu Hengye, Beijing Tongmei's shareholding platform, meaning he indirectly held shares in Beijing Tongmei.
>
> However, Beijing Tongmei and Haitong Securities stated in their reply to the inquiry letter that when the employee involved joined the company in May 2019, no equity or stock option incentive terms were promised, nor was he granted AXT stock or options after joining. While Beijing Tongmei didn't grant Zhang Jiawei shares or options of its controlling shareholder AXT, it did grant him shares in its own company. ***Beijing Tongmei deliberately avoided addressing the media and whistleblower allegations in its inquiry response. Uninformed investors reading Beijing Tongmei's reply might mistakenly believe Zhang Jiawei was not granted any shares, thus making the information disclosure somewhat misleading***.

[17] Tianyancha (天眼查) and Qichacha (企查查) are two of the most popular Chinese business information and corporate inquiry platforms. They are online databases that compile and provide detailed information about companies and individuals registered in mainland China. Both platforms aggregate vast amounts of publicly available data from various government sources, including the SAMR National Enterprise Credit Information Publicity System, court judgments, intellectual property offices (patents, trademarks), which means that the raw data they present originates from authoritative government sources. They are widely used for due diligence, risk assessment, competitive analysis, investment research, and general background checks on Chinese entities.

(Emphasis added.)

96. Sina Finance, operated by Sina Corporation (now Weibo Corporation following a 2021 privatization), is one of China's leading financial news platforms. It provides a wide range of content, including market updates, stock analysis, economic news, and corporate developments. Sina Finance is considered one of the most influential financial news platforms in China due to its large user base and integration with Weibo, China's equivalent of Twitter/X. It is frequently cited by other media outlets and referenced in financial discussions. It draws from official sources like company announcements, regulatory filings, and state-run media (e.g., Xinhua, People's Daily). It also features contributions from financial analysts and industry experts, lending credibility to some of its reporting. Its inclusion in the CSRC's Securities Information Service System as a key financial media outlet (as seen with similar outlets like Economic Herald) underscores its influence in the capital markets.

97. Sina Finance Listed Companies Research Institute is a specialized division of Sina Finance focused on in-depth analysis of publicly listed companies in China. It produces reports on corporate performance, IPO trends, governance, and market dynamics. The institute often publishes detailed articles and investigative pieces, frequently authored by experienced financial journalists or analysts, covering topics like corporate scandals, financial irregularities, and regulatory developments. The institute is well-regarded within China's financial community for its focus on listed companies and IPOs. Its reports are often republished by other major platforms (e.g., The Paper, Sohu, Tencent), indicating its authority in the field. Articles often cite regulatory filings, financial data, and industry sources, adding to their reliability.

98. Plaintiffs have also independently verified the information reported in the Sina Article. The patent records retrieved from the National Intellectual Property Administration of the

People's Republic of China regarding Zhang Jiawei (attached hereto as Exhibits 13-17) show that he, as a co-inventor, held 4 invention patents and 1 utility model patent with Guojing as the patent applicant. All these patents were applied for before Mr. Zhang left Guojing in October 2019. Three of the invention patents owned by Zhang are related to pBN composite heaters, and one invention patent is related to pBN coating. These are directly the subject of the IP infringement at issue here (which Guojing alleged Tongmei and Zhang stole), and are also directly the subject in the Supplemental Legal Opinion which states that Tongmei completed development in May 2019, when Zhang started working at Tongmei. This corroborates Guojing's allegations, as reported by the Economic Herald Article, that Tongmei quickly developed such a difficult technology in three months once Zhang started working for Tongmei, which usually takes 3-5 years.

99. Tongmei Chinese Prospectus (August 1, 2022 Version) shows that Zhang Jiawei was indeed granted a limited partnership interest, owning 3.5714% in Boyu Hengye (Tianjin) Technology Development Partnership (Limited Partnership) ("Boyu Hengye"), one of Tongmei's shareholding platforms, within one year before the Prospectus was submitted to the CSRC. The Prospectus also shows that Boyu Hengye held 637,050 shares of Tongmei, which means that Zhang Jiawei owned 3.5714% of 637,050 Tongmei shares, or approximately 22,751 shares. All this information precisely corroborates the shareholding information reported in the Economic Herald, Koukou Article, and Sina Article regarding the fact that Tongmei granted Zhang shares through its shareholding platforms.

100. However, given the fact that Tongmei never disclosed Zhang Jiawei's name in its filings with the Shanghai Stock Exchange, CSRC, or SEC during the Class Period, and neither the Chinese-language Economic Herald nor the Koukou Article revealed his full name (the Sina Article that revealed Zhang Jiawei's full name was published only after the Class Period), U.S.

investors could not learn the true identity of the "involved employee" as stated in the SSE Second Round Reply and the Supplemental Legal Opinion. Consequently, they could not independently verify the infringement at issue and were only able to rely on AXT's representations in its filings with the SEC.

101. According to the Tongmei Chinese Prospectus (August 1, 2022 Version), only 109 employees, or 7.8% of Tongmei's total 1399 employees, were granted ownership through Tongmei's employee shareholding platforms within the last year before its filing. Despite Tongmei's claim that Zhang was not a "Core Technician"—Tongmei only listed four employees in the Prospectus, including Defendant Young, as its Core Technicians—granting him share ownership certainly showed his importance to Tongmei.

102. On June 17, 2022, the SSE Second Round Reply and the Supplemental Legal Opinion were submitted to the Shanghai Stock Exchange. Neither of these documents mentioned an ongoing criminal investigation into Tongmei's and Zhang's trade secret infringement or even the potential for Tongmei to be a party to an IP infringement dispute, despite the fact that Tongmei received the "Report Letter" from Guojing and Tongmei's counsel interviewed Defendant Young and Zhang on this subject as confirmed by the Supplemental Legal Opinion.

103. Based on these false representations in the SSE Second Round Reply, Supplemental Legal Opinion, and Tongmei's sponsor's reply—stating "***no dispute or potential dispute***" with Guojing without disclosing the ongoing criminal investigation into Tongmei and Zhang (which clearly constituted a dispute, or at least a potential dispute between Tongmei and Guojing)—the Shanghai Stock Exchange preliminarily approved Tongmei's IPO application and referred it to CSRC for final approval. The SSE Second Round Reply and Supplemental Legal Opinion, and Tongmei's sponsor's reply were incorporated into the were incorporated in the Tongmei Chinese

Prospectus (August 1, 2022 Version), submitted to the CSRC for final review and determination.

104. As stated above, AXT provided an English translation of the Tongmei Chinese Prospectus (August 1, 2022 Version), including the opinion letters, via Form 8-K filed with the SEC on August 2, 2022 ("August 2, 2022 Form 8-K"). Again, in the August 2, 2022 Form 8-K, including the attached English translation of the Prospectus, AXT failed to disclose the ongoing criminal investigation against Tongmei and the material risk that the investigation and subsequent potential criminal prosecution would pose to the success of Tongmei's IPO.

105. Throughout the Class Period, neither AXT nor Tongmei disclosed the ongoing criminal investigation or pending prosecution against Tongmei in any public announcements or filings with U.S. or Chinese authorities, nor did they reveal the material risks this posed to Tongmei's IPO and AXT.

106. However, Tongmei's receipt of the Report Letter and Defendant Young's personal participation in Tongmei's internal investigation and to prepare responses to the Shanghai Stock Exchange's inquiries on this issue, including Young's signatures on Tongmei's SSE Second Round Reply, shows that Defendants had knowledge of the investigation and Guojing's allegations at the time. In fact, Defendants should have known the investigation before October 13, 2021 when the Yucheng Public Security Bureau issued the Notice of Case Initiation and initiating the formal investigation. Under Chinese law, the Bureau was required to "promptly" investigate Guojing's September 2021 complaint, conducting interrogations, inspections, and evidence collection involving Tongmei. *See* Exhibit 7, Article 174. At the latest, Tongmei must have known of the IP infringement case against it and Mr. Zhang when the case was transferred to the prosecutor for prosecution because under Chinese law, Chinese authorities were required to inform the "transfer of the case … to the criminal suspect and their defense lawyer." *See* Exhibit 7, Article 289.

**d. <u>AXT Omitted Tongmei's Failure to Respond to CSRC Inquiries and Effective Abandonment of IPO Attempt.</u>**

107. On August 1, 2022, CSRC accepted Tongmei Chinese Prospectus (August 1, 2022 Version) for review.

108. However, clearly aware of the existence of the dispute between Tongmei and Guojing, the CSRC immediately requested that Tongmei explain the "progress" of the trade secret dispute and the related criminal investigation within ten days of accepting the prospectus for review. This prompt request showed the CSRC's awareness of the dispute and its materiality. On August 10, 2022, the CSRC issued an inquiry letter containing two questions, one of which specifically concerned the "trade secret disputes" ("CSRC Inquiries," attached hereto as Exhibit 8).

109. Specifically, the CSRC Inquiries stated, in relevant part, that,

> Beijing Tongmei Xtal Technology Co., Ltd. Registration Stage Inquiry Questions
>
> 1. Regarding Trade Secret Disputes
>
> The Issuer is required to:
>
> Explain the progress of the issuer's secret disputes; whether a public security agency has established a case, or will likely establish a case in the future, against the issuer and its subsidiaries; whether it constitutes a corporate crime, and whether it constitutes an obstacle to the pending IPO.
>
> Sponsors and filing attorneys are required to verify and provide a clear opinion.



中国证券监督管理委员会
CHINA SECURITIES REGULATORY COMMISSION

请输入关键字

首页 机构概况 新闻发布 政务信息 办事服务 互动交流 统计信息

当前位置：首页 > 政务信息 > 政府信息公开 > 主动公开目录 > 按主题查看 > 发行监管 > 科创板注册审核 > 首发 > 注册问询和回复

| | | | |
|---|---|---|---|
| 索 引 号 | bm56000001/2022-00012159 | 分 类 | 注册问询和回复;审核反馈 |
| 发布机构 | | 发文日期 | 2022年08月10日 |
| 名 称 | 北京通美晶体技术股份有限公司注册阶段问询问题 | | |
| 文 号 | | 主 题 词 | |

北京通美晶体技术股份有限公司注册阶段问询问题

北京通美晶体技术股份有限公司注册阶段问询问题.wps

110. The inquiries were transmitted to Tongmei through the Shanghai Stock Exchange. The CSRC's specific inquiry into the trade secret infringements and disputes underscores the materiality of such a dispute, even if it is just a potential one, to the IPO evaluation process, as such issues could prevent the CSRC from granting final approval of Tongmei's IPO application.

111. As stated above, Chinese regulations—such as Article 10 (ii) of the Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial) ("STAR Market Registration Measures") and its subsequent iteration, the Measures for the Administration of Securities Issuance Registration of Listed Companies—prohibit a company from listing on the STAR Market if there is an ongoing criminal investigation or criminal prosecution. Disclosure of such a pending criminal investigation or a subsequent criminal prosecution by Tongmei to the CSRC would undoubtedly put a nail in the coffin, definitively ending Tongmei's IPO attempt.

112. However, during the Class Period and up to today (i.e., 1,052 days or 2 years, 10 months, 17 days), Defendants still have not responded to the CSRC's inquiries. This effectively deterred the IPO application from moving forward and prevented the CSRC from approving the

IPO, meaning that Tongmei has effectively abandoned the IPO in everything but name. Yet, during the Class Period and to date, AXT continued to represent to investors the significant benefits of Tongmei's "ongoing" IPO efforts, which the Company had, in reality, abandoned and repeatedly represented in its announcements of quarterly financial results filed in Forms 8-K that "Tongmei hopes to accomplish this goal in the coming months".

113. For context, the CSRC's database includes all inquiries sent to STAR Market IPO applicants and their corresponding responses. Typically, applicants respond within 1 to 2 months, with delays exceeding 6 months being extremely rare.

114. In fact, Plaintiffs' independent investigation into the status of Beijing Tongmei's IPO reveals that its application has been suspended as of March 31, 2025, due to outdated financial statements. *See* Exhibit 4 and below.




115. As the Koukou Article reported, although the Shanghai Stock Exchange accepted Tongmei's explanations in the SSE Second Round Reply and tentatively approved and referred Tongmei's IPO application to the CSRC, the trade secret infringement dispute "became the biggest obstacle in the registration process, hindering the progress of [Tongmei's] IPO." A senior sponsor from a prominent Chinese securities firm confirmed that "Major trade secret disputes that have entered the judicial process generally need to have a clear outcome before the regulatory authorities will determine the advancement of the company's IPO arrangements based on the impact [of the outcome]." *See* Exhibit 6. He further noted that given the conclusion of the Yucheng City Public

Security Bureau's investigation, and without a settlement between Tongmei and Guojing, "Tongmei may still face a lengthy prosecution."

116. However, none of this critical information was disclosed by AXT to its investors during the Class Period, which rendered AXT's affirmative statements materially false and misleading.

## II. MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

117. On March 23, 2021, after market hours, AXT filed with the SEC its quarterly report on Form 10-K for the period ended December 31, 2020 (the "2020 Annual Report"). Attached to the 2020 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

118. The 2020 Annual Report contained a risk disclosure stating that

> ***Intellectual property infringement claims may be costly to resolve and could divert management attention.***
> Other companies may hold or obtain patents on inventions or may otherwise claim proprietary rights to technology necessary to our business. ***The markets in which we compete are comprised of competitors that in some cases hold substantial patent portfolios covering aspects of products that could be similar to ours. We could become subject to claims that we are infringing patent, trademark, copyright or other proprietary rights of others.*** We may incur expenses to defend ourselves against such claims or enter into cross license agreements that require us to pay royalty payments to resolve such claims. For example, in 2020, we and a competitor entered into the Cross License Agreement, which has a term that began on January 1, 2020 and expires on December 31, 2029. We have in the past been involved in lawsuits alleging patent infringement, and could in the future be involved in similar litigation.

(Emphasis added).

119. The above risk warning was vague, generic, and therefore materially false and misleading at the time it was made because Defendants failed to specifically disclose that in May

2019, Tongmei hired Jiawei Zhang, a former employee of its competitor, Guojing, who brought with him trade secrets related to pBN materials that he had learned at Guojing. Tongmei used these trade secrets to quickly develop certain pBN products, subjecting Tongmei and AXT to a specific known heightened risk of criminal investigation and prosecution due to Tongmei's IP infringement.

120. On January 10, 2022, the Company filed with the SEC a current report on Form 8-K ("January 10, 2022 Form 8-K"). Defendant Fischer signed the report. Part of and attached to this current report was an exhibit titled "Preliminary Information Document of to Beijing Tongmei Xtal Technology Co., Ltd.", which was the English translation of the first version of Tongmei's Chinese prospectus filed with the Shanghai Stock Exchange (the "Beijing Tongmei Prospectus (First Version)")"). The January 10, 2022 Form 8-K states, in the relevant part, that,

> On November 16, 2020, we announced a strategic initiative to access China's capital markets by beginning a process to list shares of Tongmei in an IPO on the STAR Market. We formed and founded Tongmei in 1998 and believe Tongmei has grown into a company that will be an attractive offering on the STAR Market. To qualify for a STAR Market listing, the first major step in the process was to engage private equity firms in China ("Investors") to invest funds in Tongmei. By December 31, 2020, 10 Investors had engaged with Tongmei for a total investment of approximately $48.1 million. The remaining investment of approximately $1.5 million of new capital was funded in early January, 2021. … In exchange for an investment of approximately $49 million, the Investors received a 7.28% noncontrolling interest in Tongmei. Pursuant to the investment agreements with the Investors, each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest, in the event of a material adverse change or if Tongmei does not achieve its IPO on or before December 31, 2022. This right is suspended when Tongmei submits its formal IPO application to the CSRC. However, if on December 31, 2022 the IPO application has been submitted and accepted by the CSRC or the stock exchange and such submission remains under review, then the date when such Investor is entitled to exercise such redemption right shall be deferred to a date ***when such submission is rejected by the CSRC or stock exchange, or the date when Tongmei withdraws its IPO application.*** Tongmei would be required to sell a minimum of 10% of its equity in the IPO. The process of going public on the STAR Market includes several periods of review and is therefore a lengthy process. Tongmei does not expect to complete the IPO until mid-2022.
>
> (Emphasis added).

121. The above statements were incomplete and materially false and misleading because

Defendants failed to disclose that (i) at the time, Tongmei was under the criminal investigation in China, which legally prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (ii) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

122. Also attached to the January 10, 2022 Form 8-K was an exhibit titled "AXT, Inc. Announces Formal Application for Subsidiary IPO." This announcement stated that,

> "This is a significant achievement and an important milestone for AXT," said Morris Young, chief executive officer. "We founded Tongmei back in 1998. Since then, it has grown into a company that is engaged in the research, development, production and sale of InP substrates, GaAs substrates, germanium substrates, PBN and other high-purity materials, which we believe makes it an attractive offering on the STAR Market. With success in our addressed markets, strong customer traction, and a number of new applications coming to market this year and beyond, we have significant momentum building in our business. ***If completed, the IPO will provide proceeds that will be invested in Tongmei to enable us to expand capacity to capture high-volume opportunities across our portfolio and develop new products*** to drive incremental growth and value from market expansion in 5G, data center expansion, telecommunications modernization, healthcare monitoring, microLEDs, and more."
>
> The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. Tongmei does not expect to complete the IPO until the second half of 2022. The process of going public on the STAR Market is complicated and we have little or no experience in taking a company public in China. ***There can be no assurance that this process will be completed.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. An English version of the Tongmei preliminary information document

> has been furnished under a Form 8-K that has been filed with the Securities and Exchange Commission.
>
> (Emphasis added).

123. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that at the time, (i) Tongmei was under the criminal investigation in China, which legally prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (ii) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

124. On March 15, 2022, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

125. The 2021 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

126. The above statements were incomplete and materially false and misleading because

Defendants failed to disclose that at the time, (i) Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (ii) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

127. The 2021 Annual Report also contained another risk disclosure, warning that

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if Tongmei fails to achieve the IPO on or before December 31, 2022. This could result in disgorging the cash that we raised from the investors.

128. The above statements were incomplete materially false and misleading because Defendants failed to disclose that at the time, (i) Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (ii) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they

were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

129. On June 17, 2022, AXT filed a current report on Form 8-K with the SEC ("June 17, 2022 Form8-K"), attaching the English language Tongmei's SSE Second Round Reply, the Supplemental Legal Opinion, and Tongmei's sponsor's reply in response to Shanghai Stock Exchange's inquiries to the form. Defendant Fischer signed the June 17, 2022 Form8-K. Defendant Young signed Tongmei's SSE Second Round Reply and also attested to the accuracy of Tongmei's SSE Second Round Reply.

130. Tongmei's SSE Second Round Reply, attached to June 17, 2022 Form8-K, stated, in relevant part, that,

> (II) Whether or not infringing upon trade secrets, patents or other intellectual properties of other entities and relevant proofs, and whether or not there is any dispute or potential dispute with relevant entity
>
> The Company insists on the technology development mode of independent R&D; its core technologies are obtained through independent R&D and do not infringe upon trade secrets, patents or other intellectual properties of other entities, and ***there is no dispute or potential dispute with relevant entity***.
>
> (Emphasis added.)

131. The above statement denying the existence of any "dispute or potential dispute with relevant party" was materially false and misleading because it failed to disclose the ongoing criminal investigation and the potential dispute with Guojing. At the time, Tongmei and an Zhang were under a criminal investigation in China for alleged trade secret infringement of Guojing's trade secrets. Additionally, Guojing had reported Tongmei and Zhang to the Shanghai Stock Exchange, clearly indicating at least a potential dispute with Tongmei. Had Guojing believed Tongmei was not utilizing misappropriated trade secrets, it would not have reported Tongmei to the Shanghai Stock Exchange. The Shanghai Stock Exchange's specific inquiry into trade secret infringements and disputes underscores their materiality to the IPO evaluation process, as such

issues could prevent preliminary approval and referral to CSRC for final review. Defendant Young's participation in Tongmei's responses to Shanghai Stock Exchange's inquires makes it implausible that he was unaware of the materiality of the criminal investigation and prosecution or the status of Tongmei's IPO application. The undisclosed investigation and Guojing's report posed significant risks to Tongmei's IPO approval and AXT's financial stability and created a specific risk of redemption. U.S. investors relied on AXT's SEC filings, including the June 17, 2022, Form 8-K, for accurate risk assessments. By denying any disputes or potential disputes, Defendants misrepresented material legal and operational risks, depriving investors of essential information needed to evaluate AXT's investment risks and the likelihood of Tongmei's IPO success, in direct contradiction to their affirmative representations.

132. On August 2, 2022, AXT filed with the SEC the August 2, 2022 Form 8-K, providing the English translation of the Tongmei Chinese Prospectus (August 1, 2022 Version) filed with the CSRC. The August 2, 2022 Form 8-K stated, in relevant part, that,

> On January 10, 2022, Tongmei's formal application to list its shares in an initial public offering (the "IPO") on the Shanghai Stock Exchange's Sci-Tech innovAtion boaRd (the "STAR Market") was accepted for review by the Shanghai Stock Exchange. On July 12, 2022, the Shanghai Stock Exchange approved Tongmei's IPO application. On August 1, 2022, Tongmei's revised IPO application was accepted for review by the China Securities Regulatory Commission (the "CSRC").
>
> ….
>
> The STAR Market IPO remains subject to review and approval by the CSRC and other authorities. The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. ***There can be no assurances that the proposed STAR Market listing and IPO will ultimately be approved by the CSRC and other authorities and completed.***
>
> (Emphasis added).

133. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that at the time, (i) Tongmei was under the criminal investigation in China, which prohibited Tongmei from registering its shares for trading on the STAR Market

under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (ii) consequently, there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

134. On March 16, 2023, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

135. The 2022 Annual Report disclosed, in relevant part, that

> Tongmei submitted its IPO application to the Shanghai Stock Exchange in December 2021 and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC*** and other authorities. ***The process of going public on the STAR Market includes several periods of review*** and, therefore, is a lengthy process. Further, the timing of the completion of the Star Market IPO is subject to numerous factors outside Tongmei's control. The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company.

(Emphasis added).

136. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC,, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

137. The 2022 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

138. The above statements were incomplete and materially false and misleading because

Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

139. The 2022 Annual Report contained a risk disclosure, warning that,

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if the IPO fails to pass the audit of the Shanghai Stock Exchange, is not approved by the CSRC or Tongmei cancels the IPO application. This could result in disgorging the cash that we raised from the Investors.

140. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security

Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

141. The 2022 Annual Report also contained a risk disclosure, warning that,

> ***The terms of the private equity raised in China as a first step toward an IPO on the STAR Market grant each Investor a right of redemption if Tongmei fails to achieve its IPO.***
> Pursuant to the Capital Investment Agreements with the Investors, ***each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest, in the event the IPO*** fails to pass the audit of the Shanghai Stock Exchange, ***is not approved by the Chinese Securities Regulatory Commission ("CSRC") or Tongmei cancels the IPO application.*** The aggregate redemption amount is approximately $49 million.

> Tongmei submitted its IPO application to the Shanghai Stock Exchange and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC and other authorities.*** The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. Subject to review and approval by the CSRC and other authorities, ***Tongmei expects to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. ***There can be no assurances that Tongmei will complete its IPO in 2023 or at all.*** In the event that investors exercise their redemption rights, we may be required to seek additional capital in order to redeem their Tongmei shares and there would be no assurances that such capital would be available on terms acceptable to us, if at all. ***Any redemptions could have a material adverse effect on our business, financial condition and results of operations.***
>
> (Emphasis added).

142. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei had yet to respond to the CSRC's inquiry, further prohibiting Tongmei from obtaining the CSRC's approval for Tongmei's IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC,

requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

143. On March 15, 2024, AXT filed with the SEC its annual report on Form 10-K for the period ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to SOX signed by Defendants Young and Fischer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

144. The 2023 Annual Report disclosed, in relevant parts, that,

> Tongmei submitted its IPO application to the Shanghai Stock Exchange in December 2021 and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC*** and other authorities. The process of going public on the STAR Market includes several periods of review and therefore is a lengthy process. ***Subject to review and approval by the CSRC and other authorities, Tongmei hopes to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company.

(Emphasis added).

145. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for*

*the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei's failure to respond to the CSRC's inquiries for 583 days further prohibited it from obtaining the CSRC's approval for its IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

146. The 2023 Annual Report contained a risk disclosure, warning that,

> The proposed Tongmei IPO on the STAR Market in China could fail to be completed. This could result in investor disappointment and in failure to secure sufficient capital needed to take advantage of market opportunities for our products. Our stock price could decline.

147. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10,

2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei's failure to respond to the CSRC's inquiries for 583 days further prohibited it from obtaining the CSRC's approval for its IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted,. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

148. The 2023 Annual Report contained a risk disclosure, warning that,

> The terms of the private equity raised by Tongmei in China grant each investor a right of redemption if the IPO fails to pass the audit of the Shanghai Stock Exchange, is not approved by the CSRC or Tongmei cancels the IPO application. This could result in disgorging the cash that we raised from the Investors.

149. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things,

the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei's failure to respond to the CSRC's inquiries for 583 days further prohibited it from obtaining the CSRC's approval for its IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

150. The 2023 Annual Report also contained a risk disclosure, warning that,

> ***The terms of the private equity raised in China as a first step toward an IPO on the STAR Market grant each Investor a right of redemption if Tongmei fails to achieve its IPO.***
>
> Pursuant to the Capital Investment Agreements with the Investors, ***each Investor has the right to require AXT to redeem any or all Tongmei shares held by such Investor at the original purchase price paid by such Investor, without interest***, in the event the IPO fails to pass the audit of the Shanghai Stock Exchange***, is not approved by the CSRC or Tongmei cancels the IPO application.*** The aggregate redemption amount is approximately $49 million.
> Tongmei submitted its IPO application to the Shanghai Stock Exchange and it was formally accepted for review on January 10, 2022. The Shanghai Stock Exchange approved the IPO application on July 12, 2022. On August 1, 2022, the CSRC accepted for review Tongmei's IPO application. ***The STAR Market IPO remains subject to review and approval by the CSRC and other authorities.*** The process of going public on the STAR Market includes several periods of review and, therefore, is a lengthy process. ***Subject to review and approval by the CSRC and other authorities, Tongmei expects to accomplish this goal in the coming months.*** The listing of Tongmei on the STAR Market will not change the status of AXT as a U.S. public company. There can be no assurances that Tongmei will complete its IPO in 2024 or at all. ***In the event that investors exercise their redemption rights, we may be required to seek additional capital in order to redeem their Tongmei shares and there would be no assurances that such capital would be available on terms acceptable to us, if at all.*** Any redemptions could have a ***material adverse effect***

on our business, financial condition and results of operations.

(Emphasis added).

151. The above statements were incomplete and materially false and misleading because Defendants failed to disclose that (i) at the time, as stated above, the Yucheng City Public Security Bureau had completed its criminal investigation of Tongmei's IP infringement and transferred the case records to the public prosecutor's office, pending criminal prosecution; (ii) at the time, the pending criminal prosecution prohibited Tongmei from registering its shares for trading on the STAR Market under the CSRC regulations, such as Article 10 (ii) of the *Measures for the Administration of Securities Issuance and Registration of Companies Listed on the STAR Market (Trial)* ("STAR Market Registration Measures") and its subsequent regulation, the *Measures for the Administration of Securities Issuance Registration of Listed Companies*; (iii) on August 10, 2022, the CSRC issued an inquiry letter to Tongmei, requiring it to explain, among other things, the "progress" of Tongmei's trade secret dispute and whether a public security agency had established a case against Tongmei regarding Tongmei's IP infringement; (iv) Tongmei's failure to respond to the CSRC's inquiries for 583 days further prohibited it from obtaining the CSRC's approval for its IPO; (v) consequently, there were specific, known material risks that if Tongmei truthfully reported to CSRC about the pending criminal prosecution, the subsequent prosecution and the trade secret disputes with Guojing, Tongmei's IPO application would be denied by CSRC, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors and that AXT's financial condition, and business operations would be materially adversely impacted. Without this critical qualifying information, the statements, in the light of the circumstances under which they were made, gave a false impression that Tongmei's IPO was progressing smoothly and faced only generic, hypothetical risks.

## III. THE TRUTH BEGINS TO EMERGE

152. On April 4, 2024, before the market opened, J Capital Research ("J Capital") released a report (the "J Capital Report," attached hereto as Exhibit 9) about AXT. The Report

revealed that,

> AXT is listed in the U.S., but its business operations are almost all conducted through a subsidiary in China. AXT wants to list that subsidiary in Shanghai to capture new financing. But the listing prospectus attracted unexpected scrutiny and unveiled a plethora of undisclosed issues in China. Our research has found those issues are only the tip of the iceberg.
>
> The listing vehicle raised $49 [million] from private investors at a sky-high valuation in 2020. AXT expected to capture much more investment at the time of the IPO. But it has been 18 months since the last IPO update, and ***U.S. investors haven't been told that the IPO has apparently been blocked by Chinese regulators.***
>
> (Emphasis added, originally highlighted in pink).

153. Citing the Economic Herald Article and the Koukou Article, the Report further revealed, *inter alia*, that,

> Chinese regulators asked a lot of questions about the original submission, and slowly, AXT responded. The last submission was in August 2022. Now the process has stalled. ***U.S. Investors have been told nothing, but several press outlets in China have reported that the IPO application has been blocked***.
>
> ***
>
> This puts AXTI in a risky position. If the listing is formally rejected, AXTI will have to repay private investors the $49 mln that they put into the company in 2020-2021.
>
> The $49 mln investment contained what the Chinese press called a "gambling clause": the money was to be repaid if Tongmei failed to IPO by the end of 2022. But there was an extension: if either the China Securities and Exchange Commission or the Shanghai Stock Exchange accepted the applications, the timing would be extended until there is a formal rejection or until AXTI withdraws it. The Shanghai Stock Exchange accepted the application in January 2022, but ***the IPO is still in limbo***.
>
> AXTI had $39.9 mln in unrestricted cash and short-term investments at the end of 2023 and $12.4 mln in restricted cash. The company gained generated just $3.4 mln in operating cash flows in 2023. Short-term bank debt was already $52.9 mln at end December 2023. ***We believe that a redemption cash call of $49 mln could destroy the company.***

The company's STAR IPO prospectus says that two-thirds of the money to be raised will go to working capital needs. If there is no IPO, what happens to those needs?

**Chinese press reports reveal a multitude of other problems that were not fully disclosed to U.S. investors.**

***

Problem No. 3: The company is being sued for allegedly stealing IP

An allegation against Tongmei of IP infringement is reportedly among the issues blocking an IPO. A company called Shandong Guojing reportedly filed suit against Tongmei in 2021 for allegedly stealing technology.




(Emphasis added.)

154. The J Capital Report's analysis on the material adverse impact on Tongmei's operations and finance relied on its analysis of the Economic Herald Article and Koukou Article detailing the criminal investigation against Tongmei due to the IP infringement, Tongmei's replies to the Shanghai Stock Exchange's inquiries and Tongmei's no response to the CSRC inquiries. In

its report, J Capital Report provided the hyperlinks to the Economic Herald Article and Koukou Article.

155. On the first page of the J Capital Report, it expressly stated that its information was "accurate and reliable." Specifically, in relevant part, it stated,

> Our research and reports express our opinions, which we have based upon generally available information, field research, inferences and deductions through our due diligence and analytical process. ***To the best of our knowledge and belief, all information contained herein is accurate and reliable, and has been obtained from public sources we believe to be accurate and reliable***, and who are not insiders or connected persons of the stock covered herein or who may otherwise owe any fiduciary duty or duty of confidentiality to the issuer.
>
> (Emphasis added.)

156. On this news, the price of AXT stock fell $1.73 per share, or 34.94%, to close at $3.22 per share on April 4, 2024. The next day, AXT's stock fell $0.11, or 3.4%, to close at $3.11 per share on April 5, 2024.

157. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiffs and the other Class members have suffered significant losses and damages.

158. J Capital Research USA LLC was the firm that published the J Capital Report. According to its official website www.jcapitalresearch.com, the firm was founded by Anne Stevenson-Yang in late 2007. J Capital Research is well-known in the financial industry, often mentioned alongside other prominent firms like Muddy Waters Research or Hindenburg Research. J Capital Research "In the News" section on its website shows numerous mentions by major financial media such as Bloomberg, Wall Street Journal, Australian Financial Review. According to its website, as the Founder and Research Director, Anne Stevenson-Yang's coverage areas include solar, internet, medical devices, property, some consumer and direct-sales names, and China's macro-economy. Anne was formerly co-founder of a group of Online Media Businesses called Blue Bamboo Ventures and also founded and operated a CRM software company, Clarity Data Systems, and a publishing company whose flagship magazine is City Weekend. Over 25 years in China, Anne has also worked as an industry analyst and trade advocate,

heading the US Information Technology Office and, 1993 through 1997, the China operations of the US-China Business Council. Anne authored the 2013 monograph China Alone: China's Emergence and Potential Return to Isolation for the National Autonomous University of Mexico.

## IV. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS WERE CREDIBLY AVAILABLE TO THE MARKET DURING THE CLASS PERIOD

159. During the Class Period, Defendants' materially false and misleading statements and omissions regarding Tongmei's intellectual property disputes and IPO status were not credibly available to reasonable U.S. investors, as material information was buried in complex, Chinese-language sources inaccessible without advanced language skills and navigation expertise.

160. Tongmei's filings with the Shanghai Stock Exchange—including its prospectus, legal opinions, auditors' opinions, sponsors' opinions, and replies to SSE inquiries—comprised thousands, even tens of thousands, of pages exclusively in Chinese and were hosted on the SSE's Chinese-language website. Accessing these requires navigating to the "Issuance and Listing" section, selecting the correct "Review Project Updates" tab from multiple similar options, and entering the precise Chinese characters for "Beijing Tongmei" in the search bar. See below and Exhibits 1-4.









161. Similarly, searching for Tongmei on the China Securities Regulatory Commission (CSRC) website required navigating the "Government Affairs Information" page, locating the

"Proactive Disclosure Directory" among 30 entries, and searching for "Beijing Tongmei" in Chinese, which returned only one result—CSRC inquiries with no response from Tongmei. See below and Exhibits 8,10-12.







162. Without proficient Chinese reading comprehension and familiarity with these platforms, a reasonable U.S. investor could not locate or analyze this information, rendering it effectively inaccessible.

163. Compounding this inaccessibility, general searches for Tongmei's status or documents were futile for U.S. investors. Entering "Beijing Tongmei" or "Beijing Tongmei Xtal

Technology Co., Ltd." in the SSE's main search bar produced 500 pages of 5,000 irrelevant results, with no relevant information on the first few pages, as Tongmei was not publicly listed and lacked a ticker symbol for easy retrieval.

164. Likewise, a general search on the CSRC website's main search bar yielded no results for Tongmei. Additionally, English-language searches on Google during the Class Period did not surface key articles, such as those from the *Economic Herald* or *Koukou Caixun*, which might have hinted at Tongmei's disputes or IPO challenges. The complexity of navigating Chinese regulatory websites, the language barrier, and the absence of relevant English-language coverage ensured that Tongmei's IPO suspension, criminal investigation, and potential trade secret dispute with Shandong Guojing were not credibly available to the U.S. investing public, leaving reasonable investors unaware of material risks misrepresented by the defendants.

## V. PLAINTIFFS' CLASS ACTION ALLEGATIONS

165. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased the publicly traded AXT common stock during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

166. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's common stock shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

167. Plaintiffs' claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

168. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

169. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

170. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

171. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;
- as a public issuer, the Company filed public reports;
- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's common stock was liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

172. Based on the foregoing, the market for the Company common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

173. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## VI. COUNTS

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

174. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

175. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

176. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

177. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's common stock during the Class Period.

178. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading

statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

179. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiffs and the Class.

180. As a result of the foregoing, the market price of the Company's common stock was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's common stock during the Class Period in purchasing the Company's common stock at prices that were artificially inflated as a result of Defendants' false and misleading statements.

181. Had Plaintiffs and the other members of the Class been aware that the market price of the Company's common stock had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's common stock at the artificially inflated prices that they did, or at all.

182. As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

183. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's common stock during the Class Period.

**COUNT II**

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

184. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

185. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

186. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

187. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company common stock.

188. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

## VIII. JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: June 27, 2025

Respectfully submitted,
**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

Jing Chen, Esq.
101 Greenwood Ave, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs
and the Putative Class*

# CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On June 27, 2025, I electronically filed the foregoing **SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 27, 2025

/s/ Laurence M. Rosen
Laurence M. Rosen