IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG NOWAKOWSKI, et al., | Case No. 24-cv-02778-MMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS; AFFORDING LEAVE TO AMEND** |
| AXT INC., et al., | |
| Defendants. | |

Before the Court is defendants AXT, Inc. ("AXT"), Morris Young ("Young"), and Gary L. Fischer's ("Fischer") Motion, filed July 11, 2025, "to Dismiss Plaintiffs' Second Amended Class Action Complaint" pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Plaintiffs Craig Nowakowski and Charles Grubb, individually and on behalf of a putative class, have filed opposition, to which defendants have replied.[1] The Court, having read and considered the papers filed in support of and in opposition to the motion, hereby rules as follows.[2]

## BACKGROUND[3]

Plaintiffs, a class of "persons or entities who purchased the publicly traded AXT

---

[1] In support of their Motion, defendants have requested the court take judicial notice of seventeen exhibits. (See Doc. No. 72.) As the Court, in making the findings set forth herein, has not relied on any such document, the request for judicial notice is hereby DENIED as moot.

[2] By prior order, the Court took the matter under submission.

[3] Unless otherwise stated, the below facts are taken from the Second Amended Class Action Complaint ("SAC").

common stock between March 23, 2021, and April 3, 2024" (see SAC ¶ 1), allege AXT, "a NASDAQ-listed materials science company," obtains "nearly all of [its] revenue" from the operations of Beijing Tongmei Xtal Technology Co. Ltd. ('Tongmei')," its "Chinese subsidiary" (see id. ¶¶ 2-3) that operates as a "semiconductor materials technology company" (see id. ¶ 27). On November 16, 2020, in a press release, AXT announced its plan to conduct an initial public offering ("IPO"), "aiming to list Tongmei on China's STAR Market, an exchange established by the Chinese government to support innovative companies." (See id. ¶ 42.) In said press release, AXT further announced it was in the process of raising "approximately $50 million" from "reputable private equity firms in China" in exchange for "approximately a 7.14 percent minority interest in Tongmei" (see id. ¶ 44), and, shortly thereafter, explained that the private equity firms could redeem their shares "at the original purchase price" if Tongmei's IPO application was "rejected" or Tongmei "withdrew" it (see id. ¶ 50).

Subsequently, on, respectively, March 23, 2021, January 10, 2022, March 15, 2022, June 17, 2022, August 2, 2022, March 16, 2023, and March 15, 2024, AXT filed reports with the Securities and Exchange Commission ("SEC"), which reports either Fischer, AXT's CFO (see id. ¶ 19, 120, 129), or both Fischer and Young, AXT's CEO and Chairman of both Tongmei's and AXT's Boards of Directors, signed (see id. ¶ 18, 117, 124, 134, 143), containing, according to plaintiffs, "materially false and misleading" statements (see id. ¶¶ 117-151), in which AXT failed to disclose that "there were specific, known material risks that Tongmei's IPO attempt would fail, requiring AXT to refund the $49 million investment to the pre-IPO Chinese corporate investors[,] and that AXT's financial condition[] and business operations would be materially adversely impacted." (See id. ¶¶ 121, 123, 126, 128, 133; see also id. ¶¶ 136, 138, 140, 142, 145, 147, 149, 151.)

Specifically, plaintiffs allege, AXT's reports failed to disclose that Tongmei had hired Jiawei Zhang ("Zhang"), "a former employee of its competitor Shandong Guojing New Materials Co., Ltd. ('Guojing')" who was privy to trade secrets Guojing then accused

Tongmei of "us[ing] … to quickly develop certain … products" (see id. ¶ 68), and that Guojing had reported said trade secret infringement to law enforcement, namely the Yucheng Public Security Bureau, which, in turn, determined the case "met the criteria for a formal investigation and initiated one" (see id. ¶ 71), which investigation, plaintiffs allege, "legally prohibited Tongmei from registering its shares for trading on the STAR Market" (see id. ¶ 123). Further, plaintiffs allege, Guojing made a similar report to the Shanghai Stock Exchange ("SSE"), which made its own "inquir[y]" (see id. ¶ 129), and that AXT, in response to said inquiry, failed to report that Tongmei had falsely "failed to disclose the ongoing criminal investigation" (see id. ¶ 131). Lastly, plaintiffs allege, AXT failed to disclose that the China Securities Regulatory Commission ("CSRC"), whose approval of the IPO was disclosed by AXT as necessary, had asked Tongmei to provide details regarding any trade secret disputes, and Tongmei "failed to respond." (See id. ¶ 151.)

On April 4, 2024, J Capital Research issued a report (hereinafter, "the Report"), claiming to reveal on the basis of two Chinese-language news articles (see SAC Exs. 5 (article from the Economic Herald) and 6 (article from Koukoucaixun)), that Tongmei was "being sued for allegedly stealing" intellectual property and "awaiting prosecution" (see SAC Ex. 9 (Report) at 15), which Report, plaintiffs allege, caused AXT's stock price to fall from $4.95 to $3.22 per share, a 34.94% decrease (see id. ¶ 156).

Based on the above, plaintiffs assert the following two causes of action: "Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder" (Count I) and "Violations of Section 20(a) of the Exchange Act" (Count II).

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

3

Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); see also Fed. R. Civ. P. 8(d)(1) (providing "[e]ach allegation must be simple, concise, and direct"). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See Twombly, 550 U.S. at 555.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than … a formulaic recitation of the elements of a cause of action."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Rule 9(b), in turn, requires a party to "state with particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b). "Allegations of fraud must 'be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.'" See Elgindy v. AGA Serv. Co., 2021 WL 1176535, at *4 (N.D. Cal. Mar. 29, 2021) (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)). Consequently, to satisfy Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." See Vess, 317 F.3d at 1106.

## DISCUSSION

### A.    Section 10(b) Claim

Plaintiffs allege defendants violated section 10(b) of the Securities and Exchange Act of 1934 (hereinafter, the "Exchange Act") and SEC Rule 10b-5 by "disseminat[ing] or

approv[ing] the false statements … which they knew or deliberately disregarded were misleading." (See SAC ¶ 176.)

To state a claim under section 10(b) and Rule 10b-5, a plaintiff "must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 603 (9th Cir. 2014).

To adequately plead scienter under the Private Securities Litigation Reform Act ("PSLRA"), which governs the claims brought in the instant case, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," see Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009) (quoting 15 U.S.C. §§ 78u-4(b)(2)), and, when pleading loss causation, "must satisfy Federal Rule of Civil Procedure 9(b)'s heightened particularity requirement" See In re BofI Holding, Inc. Sec. Litig., 977 F.3d 781, 791 (9th 2020) (internal quotation and citation omitted).

By the instant motion, defendants contend plaintiffs have not sufficiently pleaded a material or false statement, scienter, or loss causation. As set forth below, the Court agrees that plaintiffs have not sufficiently pleaded either scienter or loss causation, and, consequently, does not, at this time, address materiality or falsity.

### 1.    Scienter

The Court first turns to scienter, i.e., whether an allegedly false or misleading statement was made "with an intent to deceive, manipulate, or defraud, or with deliberate recklessness." See Prodanova v. H.C. Wainwright & Co., LLC, 993 F.3d 1097, 1106 (9th Cir. 2021) (internal quotation and citation omitted). "Deliberate recklessness is not '*mere* recklessness,'" but, rather, "'an *extreme* departure from the standards of ordinary care ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.'" See id. (emphases and alteration in original) (quoting Schueneman v. Arena Pharms., Inc., 840 F.3d 698,

705 (9th Cir. 2016)).

As defendants point out, the SAC lacks sufficient specificity as to what Young and Fischer knew about Zhang's hiring, the subsequent criminal investigation, and the delay in responding to the CSRC, let alone when Young and Fischer would have learned such information. Rather, plaintiffs' primary allegations as to Young and Fischer's knowledge are wholly conclusory in nature and, consequently, unavailing. (See, e.g., SAC ¶ 21(a) (alleging Young and Fischer "directly participated in the management of [AXT]"); ¶ 21(b) (alleging Young and Fischer were "directly involved in the day-to-day operations of [AXT] at the highest levels"); ¶ 21(c) (alleging Young and Fischer were "privy to confidential information concerning [AXT] and its business"); ¶ 21(d) (alleging Young and Fischer were "directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements"); ¶ 21(e) (alleging Young and Fischer were "directly or indirectly involved in the oversight or implementation of [AXT]'s internal controls"); ¶ 38 (alleging Young "personally participated in Tongmei's IPO process" and "was authorized by AXT to promote Tongmei's IPO"); ¶ 40 (alleging Young "has been leading Tongmei's technology advancement").

Such general allegations, despite their number, and whether read individually or holistically, do not suffice to plead scienter.[4] See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1036 (9th Cir. 2002) (finding allegations as to knowledge insufficient where plaintiffs "merely assert[ed] in conclusory terms that the defendants had access to

---

[4] The cases cited by plaintiffs are distinguishable, in that the allegations viewed collectively by those courts were factual in nature. See Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1231 (9th Cir. 2004) (noting, in case alleging false projections as to earnings, plaintiffs "ha[d] hard numbers and ma[d]e specific allegations regarding large portions of [defendants'] sales data"; further noting "the Complaint contain[ed] specific statements from former employees and managers … testifying to a major slowdown in sales"); Reese v. Malone, 747 F.3d 557, 581 (9th Cir. 2014) (noting, in case alleging false statements regarding low corrosion rate of pipeline carrying oil in Prudhoe Bay, defendant "was directly responsible for the Prudhoe Bay pipeline operations"; further noting "the complaint recite[d] [defendant's] involvement in working with various government bodies to comply with [prior] Corrective Action Order" as well as "her responsibility for reporting to [defendant's] leadership regarding [earlier] spill").

United States District Court
Northern District of California

internal data" but failed to "plead, in any detail, the contents" of any such information); see also Prodanova, 993 F.3d at 1108-09 (finding allegations of knowledge insufficient where "SAC fail[ed] to explain … how [defendant's] position "establishe[d] that he had detailed and contemporaneous knowledge").

Likewise unavailing are the few factual allegations included in the SAC, namely, that Young was interviewed by Tongmei's lawyers in connection with the SSE's inquiry (see SAC ¶ 91), and that Young and Fischer signed Sarbanes-Oxley certifications attesting to the accuracy of the statements contained in the various SEC filings (see, e.g., SAC ¶ 117). First, absent "specifics concerning information provided or received during such contact," see In re Splash Tech. Holdings Sec. Litig., 160 F. Supp.2d 1059, 1080 (N.D. Cal. 2001), Young's alleged involvement in an inquiry regarding a civil wrong does not suffice to plead knowledge of a criminal investigation. Second, "Sarbanes-Oxley certifications are not enough to create a strong inference of scienter and do not make [plaintiffs'] otherwise insufficient allegations more compelling by their presence in the same complaint." See Zucco Partners, 552 F.3d at 1004.

Lastly, to the extent plaintiffs rely on the "core operations doctrine" to excuse their lack of factual allegations (see Opp. 20:5-19), the Court is not persuaded. Tongmei's IPO is a financing venture, not a part of the company's operations as a semiconductor materials technology company, let alone, unlike the cases on which plaintiffs rely, an operation essential to the company's survival. See Berson v. Applied Signal Tech. Inc., 527 F.3d 982, 984, 985 n.5, 987 (9th Cir. 2008) (holding plaintiff could rely on core operations doctrine where defendants failed to disclose stop-work orders from "one of [corporation's] most important customers," which orders had "devastating effect on the corporation's revenue"); Mulligan v. Impax Lab'ys, Inc., 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) (holding plaintiff could rely on core operations doctrine where defendant pharmaceutical company that had received multiple FDA Warning Letters allegedly misrepresented it had corrected "substandard, non-compliant manufacturing conditions pervading [the] company's manufacturing and control divisions—the heart of [the]

United States District Court
Northern District of California

company").

Accordingly, the Court finds plaintiffs have failed to allege with particularity sufficient facts to support a finding that either Young or Fischer acted with the scienter required to state a claim under section 10(b).

The Court next turns to loss causation.

### 2.    Loss Causation

To plead loss causation, a "plaintiff must allege with particularity facts plausibly suggesting" that "(1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatement; and (2) disclosure of the truth caused the company's stock price to decline and the inflation attributable to the misstatements to dissipate." See BofI, 977 F.3d at 791.

Here, as to the first element, plaintiffs allege J Capital Research's Report was a corrective disclosure, i.e., the disclosure of Zhang's hiring, the subsequent criminal investigation, and the delay in responding to the CSRC. As noted, however, the Report states it is based on information "obtained from public sources" (see SAC Ex. 9 at 1), namely, two online Chinese-language news articles published on, respectively, March 14, 2024 (see SAC Ex. 5 at 1), and October 19, 2023 (see SAC Ex. 6 at 1).

"To rely on a corrective disclosure that is based on publicly available information, a plaintiff must plead with particularity facts plausibly explaining why the information was not yet reflected in the company's stock price." See BofI, 977 F.3d at 794. Here, plaintiffs allege the news articles "were not credibly available to the U.S. investing public" (see SAC ¶ 164) given that they were published on Chinese "websites … aimed at a Chinese audience" (see Opp. 23:23-24). In their respective memoranda, the parties cite to a number of cases arguably supporting their respective positions as to whether foreign publications constitute publicly available information. Having reviewed the cited authority, the Court finds the two Chinese news articles do not constitute publicly available information. See Longo v. OSI Sys., Inc., 2021 WL 1232678, *7, *10 (C.D. Cal. Mar. 31, 2021) (finding, for purposes of determining either duty to disclose or corrective

United States District Court
Northern District of California

8

United States District Court
Northern District of California

disclosure, "foreign websites in languages such as Arabic, Chinese, Russian, etc.," were "not readily accessible to a reasonable investor"); In re Fuwei Films Sec. Litig., 634 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2009) (finding, for purposes of determining duty to disclose, "publication of three newspaper articles—in Chinese—does not transform the information contained within the articles into matters of general public knowledge"; rejecting defendant's argument that they had no duty to disclose because information was publicly available (internal quotation omitted)).

Under such circumstances, the Court finds the Report, and not the news articles referenced therein, constitutes a corrective disclosure.

As to the second element, however, plaintiffs have not pled facts sufficient to support a finding that such disclosure caused "the decline in [AXT's] stock price," see Loos v. Immersion Corp., 762 F.3d 880, 887 (9th Cir. 2014), "and not … some other negative information about the company" see In re Blue Earth, Inc. Sec. Class Action Litig., 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015) (internal quotation and citation omitted).

In particular, the Report discloses a wide variety of concerns regarding Tongmei, which are organized under the following six headings: "Problem No. 1: Tongmei production has been halted >10x for environmental infractions" (see SAC Ex. 9 at 9); "Problem No. 2: Plummeting production" (see id. at 14); "Problem No. 3: The company is being sued for allegedly stealing IP" (see id. at 15); "Problem No. 4: Fishy related-party sales" (see id.); "Problem No. 5: Tongmei has been sued multiple times for defaulting on wages to employees" (see id. at 19); and "Problem No. 6: "Numerous legal violations" (see id. at 20).

The 38-page Report focuses on the lead "problem," dedicating approximately four pages to it (see id. at 9-14) and on the sixth "problem," dedicating approximately seventeen pages to a discussion of such violations as, inter alia, "tax evasion, providing "false statistics," "inflat[ing] inventory values to push up … profit margins," "[s]uspicious loans," and "[q]uestionable building costs" (see id. at 20-37), whereas it dedicates only a

half-page to the problem on which plaintiffs rely, namely, the third problem, which shares a single middle page with the first part of the fourth problem (see id. at 15).

Under such circumstances, plaintiffs have not pled sufficient facts to support a finding that the decline in AXT's stock price was caused by disclosure of the information in the Report on which plaintiffs rely. See Blue Earth, 2015 WL 12001274, at * 3 (rejecting argument that disclosure of alleged misrepresentations caused price decline where "58-page report" covered six issues, "main focus of the report" was on other issues, and report "devote[d] a mere 5 pages" to misrepresentations on which plaintiffs relied); Bonanno v. Cellular Biomedicine Grp., 2016 WL 4585753, *6 (N.D. Cal. Sept. 2, 2016) (rejecting argument that disclosure of alleged stock promotion scheme caused price decline where report contained "multiple other negative accusations," of which "many… [were] quite serious and unrelated to plaintiffs' claims," and relevant portion of report "encompasse[d] only approximately four out of twenty-five pages").

Accordingly, the Court finds plaintiffs have failed to allege with particularity sufficient facts to support a finding that the Report satisfies the loss causation element required to state a claim under section 10(b).

## B.    Section 20(a) Claim

Plaintiffs' remaining claim is brought pursuant to section 20(a) of the Exchange Act. (See SAC ¶ 188.) To state a claim under section 20(a), a plaintiff must first plead an independent violation of the Exchange Act. See Zucco Partners, 552 F.3d at 990 (holding "Section 20(a) claims may be dismissed summarily … if a plaintiff fails to adequately plead a primary violation of section 10(b)"). Here, as noted, plaintiffs have failed to allege an independent violation of the Exchange Act, and, consequently, their section 20(a) claim fails as well.

//

//

//

//

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss is hereby GRANTED, and the Second Amended Class Action Complaint is hereby DISMISSED with leave to amend to cure the above-described deficiencies. Plaintiffs' Third Amended Class Action Complaint, if any, shall be filed no later than August 4, 2026.

**IT IS SO ORDERED.**

Dated: July 7, 2026

_____
MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California

11